In the Matter of the Application of the PEOPLE OF THE
STATE OF NEW YORK, Respondent, for Payment of an
Award Made in Proceedings to Open Melrose Avenue
in the Borough of The Bronx.

THE COMPTROLLER OF THE CITY OF NEW YORK et al.,
Appellants.

**Real property — escheat — tax — taxes may not be imposed
upon land belonging to state — neither entry upon land nor
judgment of court necessary to consummate title of state —
taxes and assessments imposed upon land between death of
owner without heirs and opening of street thereon may not
be deducted from award in proceeding by state to compel
payment.**

1. Taxes may not be imposed upon land belonging to the state.
(1 R. S. ch. 13, tit. 1, § 4, subd. 2; Tax Law, § 4, subd. 2.)   Assess-
ments for local improvements may be imposed upon such land, but
only after compliance with restrictions.

2. Neither entry upon the land nor the judgment of a court is
necessary to consummate the title of the state by escheat to real
property of a citizen or of an alien within its jurisdiction, upon whose
death there is a failure of title from a defect of heirs.

3. Where a citizen of this state died without heirs seized of real
property and twenty years thereafter a street was opened across
said land and an award made to unknown owners and thereafter
the state in an action to recover the abutting lots established its
title and thereupon brought this proceeding to compel payment of
the award, taxes and assessments imposed upon the land between
the death of the owner and the street opening may not be deducted
from the award upon the theory that title of the state did not vest
at once upon failure of descent but remained imperfect and inchoate
until established by decree.

*Matter of Melrose Ave.*, 196 App. Div. 890, affirmed.

(Argued June 1, 1922; decided July 12, 1922.)

APPEAL, by permission, from an order of the Appellate
Division of the Supreme Court in the first judicial
department, entered March 24, 1921, which unanimously

affirmed an order of Special Term directing payment of an award made in street opening proceedings.

*John P. O'Brien, Corporation Counsel (Joel J. Squier and William B. R. Faber of counsel), for appellants.* The lands for which the award was made did not escheat to the state on the date of the death of Wells, the former owner, but upon the entry of the order of Special Term, involved on this appeal, determining the state's right to the award. (*Matter of Rochester,* 136 N. Y. 83; *Gates v. De La Mare,* 142 N. Y. 307; *Fowler v. Manheimer,* 70 App. Div. 56, 59; 178 N. Y. 581; *Governeur's Heirs v. Robertson,* 11 Wheat. [U. S.] 332; *Wilbur v. Tobey,* 33 Mass. [16 Pick.] 177; *Cohnfeld v. Tanenbaum,* 176 N. Y. 126; *Wood v. Moorehouse,* 45 N. Y. 368; *Jackson v. Adams,* 7 Wend. 367; *Hamlin v. People,* 155 App. Div. 680; *People v. Fulton Fire Ins. Co.,* 25 Wend. 205.) During the period between Wells' death and the entry of the judgment establishing the escheat of his property, the state's title thereto was at most only a fiction and not such as to entitle it to exemption from taxes or to require compliance with the provisions of chapter 435, Laws of 1886, as to notice in order to levy a valid assessment thereon. (Cooley on Taxation [2d ed.], 203, 204, 205, 207; *People ex rel. Met. St. Ry. Co. v. Tax Comrs.,* 174 N. Y. 417; *People ex rel. Newburgh Savings Bank v. Peck,* 157 N. Y. 51; *People ex rel. Gould v. Barker,* 150 N. Y. 52; *McMahon v. Palmer,* 102 N. Y. 176; *Hassan v. City of Rochester,* 67 N. Y. 528.)

*Charles D. Newton, Attorney-General (William J. Smith of counsel), for respondent.* Lands escheat to the people immediately upon the death of decedent without heirs. (*McCormack v. Coddington,* 184 N. Y. 467; *Mooers v. White,* 6 Johns. Ch. 360; *Johnston v. Spicer,* 107 N. Y. 185.) The property of the state of New York is exempt from taxation by the city. (Tax Law, § 4, subd. 2.)

CARDOZO, J.   One James Wells, a citizen of this state, died in 1879, without heirs, seized of real property in the city of New York.   Twenty years later, in 1899, the city of New York opened Melrose avenue across the land. In the condemnation proceedings then begun, an award of $2,975 with interest was made to unknown owners. Another twenty years went by, and in 1919 the state of New York, having sued in ejectment to recover the abutting lots, obtained judgment establishing the defect of heirs and its own title to the fee.   There followed this proceeding to compel the payment of the award.   The city of New York, answering the petition by its comptroller, admits the failure of title by reason of defect of heirs.   It seeks, however, to deduct from the award the taxes and assessments imposed upon the land between the death of the owner and the opening of the avenue. Taxes may not be imposed upon land belonging to the state (R. S. pt. 1, ch. 13, tit. 1, sec. 4, subd. 2; Tax Law [Cons. Laws, ch. 60], sec. 4, subd. 2).   Assessments for local improvements may be imposed upon such land, but only after compliance with restrictions, as, *e. g.*, notice to the state comptroller, which in this case were disregarded (Public Lands Law [Cons. Laws, ch. 46], sec. 21).   These rules are conceded by the city, but their application is contested.   The argument is that the title of the People did not vest at once upon the failure of descent, but remained imperfect and inchoate until established by decree.   Support for this postponement of the vesting is found or at least looked for in the antiquities of feudal custom.   Subjects of curious interest they remain.   We think they are no longer law.

" The People of this state, in their right of sovereignty, are deemed to possess the original and ultimate property in and to all lands within the jurisdiction of the state; and all lands the title to which shall fail, from a defect of heirs, shall revert, or escheat to the People " (Constitution, art. I, sec. 10).   There is no room in this simple

and sweeping mandate for an indeterminate interval of suspension or abeyance. The state as the ultimate owner is in effect the ultimate heir (*Matthews* v. *Ward,* 10 Gill & J. [Md.] 443, 451; *People* v. *Richardson,* 269 Ill. 275; *Burgess* v. *Wheate,* 1 W. Bl. 123, 163, 164; *Christianson* v. *King County,* 239 U. S. 356, 370). Ejectment (Code Civ. Pro. sec. 1977; Public Lands Law, section 139-c, as amended by L. 1920, ch. 932) or inquest of office " does not constitute an escheat " (*Sands* v. *Lynham,* 27 Gratt. [Va.] 291, 298). It is the remedial expedient by which the fact of escheat is authenticated where there is uncertainty or contest. The fact and not the record is the origin of title.

We do not overlook distinctions that were drawn in the days of the feudal kingship. The incidents of escheat varied as the person dying without heirs was alien or subject. When an alien died, there was no need of inquest of office or other judicial determination. The alien had no heritable blood, and hence heirship was impossible (*Hamilton* v. *Brown,* 161 U. S. 256, 263; *Jackson* v. *Adams,* 7 Wend. 367). When citizen or subject died, there was need of some restraint upon the power of the mighty. In such a case there was at least a presumption of living heirs (*Wilbur* v. *Tobey,* 16 Pick. 177). The presumption was one to be heeded by the king as well as others. Statutes of Henry VI (8 Hen. VI, c. 16; 18 Hen. VI, c. 6) bring the evil and the remedy before us. They recite that the lands and tenements of many of the king's liege people are seized upon the inquests of escheators, or let to farm by the treasurer or chancellor before inquests are returned. There shall be no royal grants thereafter in advance of office found (*Doe* v. *Redfern,* 12 East, 96, 109; *Wilbur* v. *Tobey, supra*). The effect of these statutes was to render the king's title imperfect and inchoate. Even if he was owner, he was unable, before return of the inquest, to dispose of what he owned. How his rights stood before the statutes

is involved in some obscurity. SHAW, Ch. J., thought that there were restraints at common law (*Wilbur* v. *Tobey, supra*). That, it seems, was the view of SUTHER-LAND, J., in *Jackson* v. *Adams* (*supra*), decided by the Supreme Court of this state in 1831. Other judges have maintained that there were no restraints aside from statute (*McCaughal* v. *Ryan*, 27 Barb. 376, 378). " Staundford in his Prerogativa Regis, 54a, though he states that the King has a *possession in law* upon a descent, reverter or escheat; yet adds, that he cannot make a *possession in deed*, because there is a statute (18 Hen. 6) to the let thereof " (Lord ELLENBOROUGH in *Doe* v. *Redfern, supra*). Later scholarship has thought it the better view " that an inquest of office is only a proceeding to ascertain the title of the Crown by escheat, and not an essential condition to the vesting of such title, ' or else the freehold should be in suspense which may not be ' " (Hardman, The Law of Escheat, 4 Law Quarterly Rev. 318, 336). The whole subject is closely interwoven with the ancient law of seizin. Blackstone, treating of escheats, reminds us that even where there are heirs, " an entry or other seizin " was once required " in order to make a complete title " (Bl. Comm. bk. 2, c. 15, p. 245; cf. 4 Kent's Comm. 386, 389; Maitland, The Mystery of Seisin, Collected Papers, I, 365; Holdsworth, History of English Law, III, 81). Our forefathers, in speaking of title, thought often of seizin when to-day we think of ownership (Holdsworth, *supra*). General statements that " the King's title was not complete without an actual entry upon the land, or judicial proceedings to ascertain the want of heirs or devisees " (*Hamilton* v. *Brown, supra;* Blackstone, *supra*), are likely to be misleading unless we keep in mind the common-law conception of seizin and its consequences.

That conception is to-day of vanishing importance alike for sovereign and for subject. Entry upon land is unnecessary in New York to perfect the title of an heir,

or his capacity to transmit the inheritance to others (Kent, *supra*). We think it is unnecessary to perfect the title of the state. Escheat in the days of Henry VI was the privilege of the feudal lord, exercised for his own good (*Atty.-General* v. *Mercer*, 8 App. Cas. 767, 772), with all the attendant temptation, where the lord was also king, to oppression of the subject. Escheat to-day is not the privilege of one, but the collective right of all when the individual right has failed. We agree with STRONG, J., writing for the General Term of the Supreme Court in *McCaughal* v. *Ryan* (*supra*), decided in 1857, that the restraints imposed by ancient statutes upon conveyance by the king are not continued by our law as restraints upon conveyance by the state (Art. I, sec. 16; *Matter of Carnegie Trust Co.*, 206 N. Y. 390, 397). No longer are there vassals trembling at the rapacity of kings and lords.

Escheat, as it survives in the Constitution of New York, preserves the name but ignores the origin of its feudal prototype. In origin, it was an incident, not of sovereignty, but of tenure. "An escheat it must be remembered, never falls to the King, as such, but goes always to the lord of the fee" (Hardman, The Law of Escheat, 4 Law Quart. Rev. 318, 322). Now feudal tenures are abolished (Const. art. I, sec. 11), and all lands within the state are declared to be allodial (Art. I, sec. 12). What was once an incident of tenure, has become an incident of sovereignty (*Matthews* v. *Ward*, *supra*). " In personal estates, which are allodial by law, the King," said Lord MANSFIELD (*Burgess* v. *Wheate*, *supra*), " is last heir where no kin." With tenures abolished, succession is by like right whether the subject of escheat is personal estate or real (*Sands* v. *Lynham*, *supra*). In the light of present day conditions, we see no reason for the preservation of a distinction, if we assume that there was one at common law, between the title of the state upon the death of aliens without heirs and its

title in like circumstances through succession to the rights of citizens. Neither entry upon the land nor the judgment of a court is necessary, when the alien dies, to consummate the title. This has many times been held (*McCormack* v. *Coddington*, 184 N. Y. 467, 475; *Goodrich* v. *Russell*, 42 N. Y. 177, 181; *Mooers* v. *White*, 6 Johns. Ch. 360; *Jackson* .v. *Lunn*, 3 Johns. Cas. 109, 120). We think they remain unnecessary when the owner is a citizen. In neither case, of course, may the state enter with a strong hand, if its title is contested by one in peaceable possession. The statute gives a remedy in such circumstances by action of ejectment (Public Lands Law, sec. 139c, formerly Code Civ. Pro. sec. 1977). None the less, as in other cases of contested right, the judgment does not create the title which it registers. That was the ruling of the Supreme Court at its General Term in *McCaughal* v. *Ryan* (*supra*), where the succession of the state was to the title of a citizen. There is a dictum to the same effect in *Croner* v. *Cowdrey* (139 N. Y. 471, 476). To the same effect are the rulings in other jurisdictions (*Montgomery* v. *Dorion*, 7 N. H. 475, 481; *State ex rel. Roberts* v. *Reeder*, 5 Neb. 203; *Sands* v. *Lynham*, 27 Gratt. [Va.] 291; *Colgan* .v. *McKeon*, 24 N. J. L. 566; cf. 4 Kent Comm. 423). We do not ignore decisions and dicta to the contrary (*Wilbur* v. *Tobey*, *supra;* *Jackson* v. *Adams*, *supra;* *State* v. *Savings Union Bank & Trust Co.*, [Cal.] 199 Pac. Rep. 26; *Wunderle* v. *Wunderle*, 144 Ill. 40; *Delaney* v. *State*, 42 N. D. 630). We are unable to accept them as statements of the living law.

The consequences of a different holding reinforce the holding made. The statute says that there shall be no sale for taxes or assessments of lands belonging to the state (Public Lands Law, sec. 21). If title is postponed till judgment, land may be sold before judgment is recovered. It may happen, too, that the sale will be made at a time when the state is without knowledge of

the escheat. Title will then be lost before it has been gained. The allowance of such consequences would go far to nullify the statute.

Nothing in this decision affects the case of one, whether alien or citizen, whose title is merely defeasible, good until annulled (*Fairfax's Devisee* v. *Hunter's Lessee,* 7 Cranch, 603; *Phillips* v. *Moore,* 100 U. S. 208; *Maynard* v. *Maynard,* 36 Hun, 227). There are distinctions, which it is unnecessary to amplify, between purchase and descent (*Techt* v. *Hughes,* 229 N. Y. 222, 226).

The order should be affirmed with costs.

HISCOCK, Ch. J., HOGAN, POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Order affirmed.