[No. 24592. *En Banc.* November 10, 1933.]

*In the Matter of the Estate of* FRANK LYONS, *Deceased.*
THE STATE OF WASHINGTON, *Appellant,* v. THE TERRITORY OF ALASKA, *Respondent.*[1]

*William H. Pemberton,* for appellant.

*Stratton & Kane,* for respondent.

[1] Reported in 26 P. (2d) 615.

TOLMAN, J.—This is an appeal, by the supervisor of the division of state government charged with the administration of matters involving inheritance taxes and escheats, from a judgment entered by the trial court denying the petition of the state of Washington for the escheat to it of the assets of the estate of Frank Lyons, deceased.

The facts are stipulated, and, so far as now considered necessary to an understanding of the question presented, are substantially as follows: The deceased, Frank Lyons, died intestate and without heirs on or about the first day of April, 1931. At the time of his death, and for some twenty-seven years continuously prior thereto, the deceased had resided and been domiciled in Nulato precinct, territory of Alaska, and there he died.

Shortly after the death of Mr. Lyons and on June 2, 1931, one A. J. Stockman was, in Alaska, duly and regularly appointed as administrator of the estate, qualified, and has been the qualified and acting administrator in Alaska at all times since. Claims of creditors were duly filed against the estate in Alaska amounting to $428.78, and the probable cost of administration and of the closing of the estate is stipulated to be $740.18, in addition to the amount due creditors.

At the time of his death in Alaska, the deceased had in his possession a savings bank deposit book showing that he had on deposit in the savings department of the First National Bank of Seattle, Washington, the sum of $6,229.50. The savings bank deposit book is in the usual form. In it are printed the rules governing deposits and withdrawals, among which is a rule to the effect that no money shall be payable or shall be withdrawn "unless the depositor's book be produced and the withdrawal entered therein," followed by the usual

provision permitting satisfactory proof of loss of the book.

Thereafter, such proceedings were had in the superior court of the state of Washington for King county as resulted in the appointment of an administrator in this state, who apparently qualified, and who published notice to creditors, collected from the bank the amount of savings deposit referred to, and under order of court paid the expenses of the administration, and who now has on hand belonging to the estate of the deceased the sum of $5,937.58. In April, 1932, the then supervisor of the inheritance tax and escheat division of the state filed a petition praying that the assets of the estate, after payment of the expenses of administration, be escheated to the state of Washington; and thereafter, on June 11, 1932, acting under order of the Alaska court which appointed him, the Alaska administrator petitioned for the distribution of the remaining assets of the estate to him for distribution and escheat to the territory of Alaska under the direction of the Alaska court.

It is further stipulated that, after diligent search and inquiry, both by the Alaska administrator and by the local administrator, no heirs of the deceased have been found, and none have appeared making claim to the estate or to any part of it, and the stipulation concludes: "that said Frank Lyons died without any heirs."

The stipulated facts are so framed as not to present the question of whether the junior and ancillary administration in this state should transmit the residue in this state to the administrator in Alaska for distribution by the Alaska court; but, by presenting the ultimate fact that the deceased died without heirs, we are asked to determine the law with reference to the final disposition of the assets of the estate. In the light

of the conclusion which we have reached upon the question thus submitted, we do not now determine what the rights of the creditors who have proved their claims in Alaska would be if the results were otherwise.

The statute under which the state claims, Rem. Rev. Stat., § 1356, reads:

"Whenever any person possessed of any property within this state shall die intestate leaving no heirs, such property shall escheat to, and the title thereto immediately vest in the state of Washington, subject, however, to existing liens thereon, the payments of decedent's debts, and the expenses of administration."

As we read the statute, its meaning seems clear that the place of death or the residence of the deceased before his death are not in themselves important, but that the one material and governing fact to be determined is: Was he possessed of *any property within this state* when he died? We therefore cannot follow the theory advanced by the appellant that the state, by this statute, has undertaken to claim all intangible property without a reference to its legal situs.

In this respect, the appellant seems to rely chiefly on the English rule based upon the feudal law. *In re Barnett's Trusts,* Law Journal 1902, New Series, Vol. 1, p. 164; *Estate of Arthur George Bell,* Solicitors' Journal & Weekly Reporter, Vol. 52, p. 600.

That the American courts have not followed the English rule, is quite clearly demonstrated by the language of Judge Cardozo in *In re Melrose Avenue,* 234 N. Y. 48, 136 N. E. 235, 23 A. L. R. 1233, where, in deciding a somewhat similar question, he said:

"Escheat, as it survives in the Constitution of New York, preserves the name but ignores the origin of its feudal prototype. In origin, it was an incident, not of sovereignty, but of tenure. 'An escheat it must be remembered, never falls to the King, as such, but goes always to the lord of the fee.' (Hardman, The Law of

Escheat, 4 Law Quart. Rev. 318, 322). Now feudal tenures are abolished (Const. art. 1, § 11), and all lands within the state are declared to be allodial (Art. 1, sec. 12). What was once an incident of tenure, has become an incident of sovereignty (*Matthews v. Ward, supra*). 'In personal estates, which are allodial by law, the king,' said Lord Mansfield (*Burgess v. Wheate, supra*), 'is last heir where no kin.' With tenures abolished, succession is by like right whether the subject of escheat is personal estate or real.''

The rule thus stated is the general rule.

''In this country there are no feudal tenures, and property escheats directly to the state as the sovereign power within whose jurisdiction it is situated, . . .'' 21 C. J. 852.

■ The fundamental principle that the law of the domicile governs the distribution of the assets of a decedent is established beyond question.

''In the administration and settlement of decedents' estates personal property is distributed by the law of the domicil of the decedent at the time of his death. This rule has been universal for so long a time that it may now be said to be a part of the *jus gentium*, . . .'' 5 R. C. L. 929.

''As a general rule the excess of the assets resulting from an ancillary administration, after the payment of local debts, expenses of administering, and local legacies, if any, should be transmitted to the administrator of the domicil, to be there distributed according to the law of the domicil, and it is proper in such cases for the local court to make an order to that effect. All that should be transmitted is the balance or residuum after the payment of the claims of local creditors, and a final settlement of the accounts of the ancillary administrator.'' 11 R. C. L. 441.

''The principle is fundamental that the law of the domicil governs the distribution of the assets of a decedent. Even when the estate is partly administered in different jurisdictions the disposition, succession to, and distribution of personal property wherever situ-

ated is governed by the law of the country of the owner's or intestate's domicil at the time of his death, and not by the conflicting laws of the various places where the property is situated. In giving effect to a foreign will courts are governed by the law of the testator's domicil." 11 R. C. L. 445.

This court has recognized that rule expressly in *Rader v. Stubblefield*, 43 Wash. 334, 86 Pac. 560. The other authorities relied upon by the appellant on this branch of the case are all easily distinguishable. We feel that a detailed discussion would not have a practical value sufficient to warrant the space required.

Referring back to the language of the statute, "possessed of any property within this state," it seems to us that the decisive question is: Was this credit, owing by the Seattle bank and evidenced by the bank book in the possession of the deceased in Alaska, where he resided, property within this state?

Appellant seems to concede that, for inheritance tax purposes, it would not be property within this state, but he apparently contends that there is a special rule governing questions of inheritance tax which is not applicable to escheats. We do not see any good reason for such a distinction, and we think there is none. The right to escheat property and the right to levy a tax are both attributes of sovereignty, one as much as the other, and the broad language used by the courts in discussing the question cannot logically be limited to the question of taxation alone.

Before the days of inheritance tax litigation in this country, the rule appears to have been well settled. The supreme court of the United States, in common with the state courts, repeatedly and consistently held that the situs of intangible property is at all times at the domicile of the owner. *Railroad Company v. Pennsylvania*, 82 U. S. 300, 320; *New Orleans v. Stempel*, 175 U. S. 309.

Then came the days when the several states sought to levy an inheritance tax against every possible element of value in the decedent's estate, resulting in conflict between the states as to intangibles, and the supreme court of the United States in *Blackstone v. Miller,* 188 U. S. 189, upheld a tax by the state of New York on a debt which one of its citizens (a New York bank) owed at the time of his death to a citizen and resident of the state of Illinois, notwithstanding the fact that the state of Illinois had likewise imposed a similar tax upon the same property.

This was followed by *Bullen v. Wisconsin,* 240 U. S. 625, upholding the power of the state of Wisconsin to tax intangible credits owing to a deceased citizen of that state, although the money was owing by citizens of other states and the evidences of the credit were deposited with an Illinois trust company, the court saying:

"Therefore the inheritance may be taxed at the place of domicil, whatever the limitations of power over the specific chattels may be, as is especially plain in the case of contracts and stock."

Then came the case of *Farmers Loan & Trust Co. v. Minnesota,* 280 U. S. 204, 65 A. L. R. 1000, from which we quote:

"*Blackstone v. Miller, supra* [188 U. S. 189] and certain approving opinions, lend support to the doctrine that ordinarily choses in action are subject to taxation both at the debtor's domicile and at the domicile of the creditor; that two States may tax on different and more or less inconsistent principles the same testamentary transfer of such property without conflict with the Fourteenth Amendment. The inevitable tendency of that view is to disturb good relations among the states and produce the kind of discontent expected to subside after establishment of the Union. The Federalist, No. VII. The practical effect of it has been bad; perhaps two-thirds of the States have en-

deavored to avoid the evil by resort to reciprocal exemption laws. It has been stoutly assailed on principle. Having reconsidered the supporting arguments in the light of our more recent opinions, we are compelled to declare it untenable. *Blackstone v. Miller* no longer can be regarded as a correct exposition of existing law; and to prevent misunderstanding it is definitely overruled. . . .

"While debts have no actual territorial situs we have ruled that a state may properly apply the rule *mobilia sequuntur personam* and treat them as localized at the creditor's domicile for taxation purposes."

The writer of the opinion then proceeds to quote the language used by Mr. Justice Field in *Railroad Company v. Pennsylvania, supra,* as follows:

"But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be in the nature of things in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities, and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement."

There has since been no deviation, and that rule, as laid down in 1872 and thus reaffirmed in 1930, we consider to be the established law. *In re Sherwood's Estate,* 122 Wash. 648, 211 Pac. 734, and *In re Ellis' Estate,* 169 Wash. 581, 14 P. (2d) 37.

The debt owing by the Seattle bank was a credit belonging to the decedent Lyons before and at the time

of his death; and, applying the rule *mobilia sequuntur personam,* the situs of this property was at the domicile of its owner, and therefore it was not property within this state at the time of his death and not subject to escheat under our statute.

The judgment appealed from is affirmed.

ALL CONCUR.