The Ulster County Savings Institution, Plaintiff, *v.* The People of the State of New York and Others, Defendants.

Henry Paff and Others, Petitioners, Respondents; The People of the State of New York, and the State Comptroller of the State of New York, Appellants.

Third Department, November 11, 1936.

*John J. Bennett, Jr., Attorney-General [Arthur T. McAvoy, Assistant Attorney-General,* of counsel], for the appellants.

*Krieger & Kuhnberg [Raphael H. Weissman* of counsel], for the respondents.

McNamee, J. This is a proceeding at the foot of the judgment for the distribution of surplus moneys. The action was brought

by the plaintiff bank to foreclose a mortgage on premises in Ulster county, in which the State of New York and the unknown heirs of Robert Blume and Lloyd D. Prall were defendants.

Robert Blume became the owner of the premises in question on May 1, 1908, and thereafter during his life held them subject to the mortgage mentioned, and subject to the inchoate right of dower of his wife Margaret. On May 7, 1911, Robert Blume died intestate, leaving his widow, but no heirs, nor next of kin, and administration of his estate was granted by the Surrogate's Court to the widow Margaret Blume. On August 24, 1914, Margaret Blume died, without having accounted as administratrix of her husband's estate, leaving the petitioners, her brothers and sisters and nephews and nieces, as her heirs at law and next of kin.

In the interim from the death of Robert Blume to the death of his wife the mortgage was foreclosed. The plaintiff was paid in full, and under the order of the court the surplus moneys, now amounting to $1,452.90, were paid into court to the credit of the action. Margaret Blume never had any interest in the mortgaged premises, beyond that of her dower. There is no dispute on the facts.

The petitioners and the State Comptroller have filed their respective claims to the moneys in question.

The petitioners contend that the surplus moneys arising from the foreclosure sale became personal property at that time and are to be distributed as such. And further, that by reason of chapter 518 of the Laws of 1929, then constituting subdivision 16 of section 98 of the Decedent Estate Law, the petitioners must be deemed the next of kin of Robert Blume for all the purposes specified in article 3 of that law, which provides for the descent and distribution of decedents' estates; also that this statute was retroactive. And, accordingly, they claim the moneys in contest.

The Attorney-General urges that the 1929 statute mentioned has no application to the facts of this case; that the mortgaged premises were owned by the State at the time of the foreclosure sale; that there was no equitable conversion of these lands into money for the benefit of the petitioners by the involuntary sale; and that, accordingly, the moneys in question belong to the State.

After declaring that the original and ultimate property in all lands within its jurisdiction is in the State, the Constitution (Art. 1, § 10) provides that "all lands the title to which shall fail, from a defect of heirs, shall revert, or escheat to the People." The Public Lands Law (§ 68) directs that "Lands escheated to the State for defect of heirs shall be held subject to the same trusts and incumbrances to which they would have been subject if they had

descended." And the Legislature has given power to the Commissioners of the Land Office, in their discretion and on the warrant of the Comptroller, to discharge any incumbrances upon the land of the State, or upon any interest therein, and otherwise to protect the State's interest in such lands. (Public Lands Law, § 19.)

Certainly, no one would doubt that if the deceased owner left heirs they would succeed to his title by descent; and so, upon the death of Robert Blume, without heirs, title to the lands in question at once escheated to the State; and this ownership by escheat continued in the State, subject to the dower of the widow and the lien of the mortgage. It was not necessary for the State to take any proceeding or perform any act to perfect or defend its title thus acquired. No record could add to the constitutional mandate. Apart from the incumbrances of dower and the mortgage, the State's title to the lands was complete and free from defect from May 7, 1911, to the time of sale in foreclosure. (*Matter of People* [*Melrose Ave.*], 234 N. Y. 48, 54.)

The statute on which the petitioners rely was in effect only from April 11, 1929, to September 1, 1930, when it was repealed. (Laws of 1929, chap. 518; Laws of 1929, chap. 229, §§ 6, 21; Laws of 1930, chap. 174, § 10.) At the beginning of that period the State had owned the land in fee for eighteen years. It is not a question here whether the statute was retroactive; but rather, whether its purpose was to divest the State of its title of many years standing. We do not believe the Legislature intended such a consequence, even though the surplus proceeds of sale were to be regarded as personalty. To hold otherwise would lead to confusion and uncertainty of titles, the perilous results of which no one can now foresee. (*Matter of Germaine*, 268 N. Y. 475, 479, 480.) In other words, no land belonging to the estate of Robert Blume was sold at the foreclosure sale, but the lands of the State; and no part of the proceeds of that sale could form any part of his estate, real or personal. The doctrine of equitable conversion is without bearing, and the statute relied upon by the petitioners has no application. And since the State was the owner of the equity of redemption at the time of sale, it follows that the surplus moneys arising therefrom belong to the State.

The order appealed from is reversed, and the matter remitted to the Special Term to make an order in harmony with this opinion, without costs.

HILL, P. J., RHODES, BLISS and HEFFERNAN, JJ., concur.

Order reversed on the law, and matter remitted to Special Term to make an order in harmony with opinion, without costs.