Love, J.
The People appeal from a decree of the. Surrogate of Monroe County which grants the application of Clarence A. Smith, as administrator of the goods, chattels and credits of Joseph H. Clark, deceased, for an order to mortgage, lease or sell the real property of the deceased at private sale, in the discretion of the Surrogate, for the purposes of distribution, payment of the expenses of administration and debts and for the best interests of the estate under the provisions of section 234 of the Surrogate’s Court Act.
The decedent concededly died at Rochester on January 10, 1946, leaving him surviving no wife, child, father, mother or any known collaterals or their descendants.
An order to open a safe deposit box was made on January 11, 1946, and no will was found.
Personal property, consisting of cash, amounted to $3,614.13.
Real estate situate at 31 Second Street, Troy, New York, consisting of a parcel of land 25 feet by 130 feet, with two buildings upon it, one a three-story brick structure, the first floor having’ been used for a store and the other two as apartments, and the other brick building at the rear, was assessed at $20,000.
The records of the Surrogate’s Court show that on January 17, 1946, one Arline Schwalb, filed a petition for letters of administration as a creditor stating therein that decedent left no next of kin or distributees.
She claimed decedent owed her $2,559 for room and board, personal services and transportation of decedent from Conesus to a hospital and to and from a physician’s office. Her affidavit of claim was filed on January 28,1946.
On her petition a citation was issued to Clarence A. Smith, as Manager and Director of Finance of the County of Monroe, returnable on January 28, 1946.
*694 On the return day an order was made appointing said Smith administrator with the recital that in accordance with section •' 118 of the Surrogate’s Court Act he had a prior right to administer the estate.
An allowance and expenses were granted to counsel for the creditor and all proceeds ordered subject to the further order of the court.
On February 23, 1946, the administrator entered into a contract of sale of the real estate, subject to the approval of the Surrogate, to one Cuthbert Compton of the town of Bethlehem, county of Albany, New York, for the sum of $13,500.
The claim of Arline Schwalb in the sum of $2,559 was rejected on March 14,1946.
On March 18, 1946, an order of publication for creditors was made and publication was had in the Daily Record, a newspaper published in Monroe County.
On March 12, 1946, the administrator petitioned the Surrogate for an order directing sale of the real estate “ for the purposes of distribution and in his discretion for the best interests of the said estate ”. The People were made a party.
The Attorney-General filed a notice of appearance on March 26,1946.
On the return day the affidavit of John J. King was read.
He is a Title Attorney in the State Department of Law.
The affidavit was read in opposition to the application to sell the real estate for the purposes of paying debts, expenses of administration and distribution of the assets of the estate.
It recites that the record in the proceeding shows that decedent died intestate leaving no wife, child, father, mother or any known collaterals or descendants and that, such being the case, title to the real property escheated to the sovereign, People of the State of New York immediately upon his death and was therefore then in the People.
He sets forth the results of his investigations in detail showing no heirs or distributees.
Further that the People have commenced an action in the Supreme Court of Rensselaer County to perfect its title pursuant to the provisions of sections 200-215 of the Abandoned Property Law.
That the application to sell was unnecessary and premature, that there was a sufficient sum in personal property of the funds of the estate to pay all debts and administration expenses of the estate which have been allowed and that until such time a» rejected claims are allowed which would show that the *695 personal property of the estate is insufficient to pay debts and administration expenses, the application was premature.
The petition also recited that schedule marked “ A ” showing the debts then known to be due by the estate was attached. It was not attached but doubtless the list of debts is found in an affidavit by the attorney for the administrator filed on April 29, 1946, which states that the total amount of cash collected is $3,614.13, and the total amount of bills paid $4,284.38, leaving a deficit of $670.25, to which was added the rejected claim of Arline Schwalb amounting to $2,557 (really $2,559) to show a total deficit of $3,227.25.
It will be noted that the list is headed “ Bills Paid ” in a total of $4,284.38, but it was probably intended to be a combination of bills paid and anticipated administration expenses, and allowances to the administrator, his attorney and the special guardian together with various items created by the proposed sale of the real estate.
Items for title search, insurance premiums, referee’s fees, stenographer’s fees, appraiser’s fees, publications in Albany and Troy newspapers, City of Troy and County of Rensselaer taxes and water rents would seem to be allocable to the sale of the real property. Some items of travel expenses doubtless were created in that connection. Not many of these items are debts owed by decedent on his death, certainly not enough to come at all close to a requirement to sell real estate to pay debts or administration expenses.
The item listed for paying the mortgage on the real estate to the Troy Savings Bank is clearly excluded by subdivision 1 of section 234 of the Surrogate’s Court Aot.
Subdivision 3 of that section provides for the sale of real estate for the purpose of payment of the reasonable expenses of administration as allowed by the Surrogate. We do not find that any allowances were made save the one mentioned above made to the attorney for the creditor who petitioned for letters of administration.
Elimination of the items mentioned in the last three sentences and, of course, that of the claim for $2,559 which was rejected on March 14, 1946, establishes the correctness of the Attorney-General’s assertion, made before the Surrogate and now, to the effect that there was a sufficient sum in personal property of the funds of the estate to pay all debts and administration expenses of the estate which have been allowed and that, therefore, a sale should not have been ordered for the purposes of paying debts and allowed administration expenses.
*696 The one ordered on those grounds was unnecessary and premature.
Nor were there any conditions authorizing the use of the discretion of the Surrogate or making it for the best interests of the estate to order a sale.
That which calls the latter two grounds, or either of them, into play involves in the beginning, known heirs. A surrogate might act upon either of those grounds to avoid litigation, such as actions in partition, wastage or loss.
It is clear that no order of sale could properly be made here for purposes of distribution.
The only known distributee to this minute is the State. Should some other appear and seek his share in accordance with law within fifteen years, his interest shall be protected.
That does not mean that an administrator may continue a search for one during the coming fifteen years.
Escheat, now very generally regulated by statute, has come to signify a falling of decedent’s estate into the general property of the State on his death, intestate, and without lawful heirs.
In an escheat for defect of heirs the right of the State to take the property has been based upon the theory that the State takes by succession, as the last heir, in some instances.
Latterly, State Constitutions and statutes provide that the State takes, not by succession or as the last heir of the decedent but because there are no heirs, the State’s right being the right of the sovereign since,' if the State took as heir, there would be no failure of title.
In such a case as this, title vests in the State at once, upon the death of a decedent, intestate and without heirs or distributees.
By the last is meant without known heirs or distributees.
The requirement that the State prove that a decedent died “ having no heirs ” to entitle the State to escheat the decedent’s estate requires only proof that deceased died leaving no heirs who could be ascertained by such diligence as a reasonably diligent person would exercise in the transaction of his own business under the same or similar circumstances. (Robinson v. State, 117 S. W. 2d 809 [Tex.].)
Neither entry upon the land nor a judgment of a court is necessary to consummate the title of the State under an escheat. Title vests in the State without judicial procedure but some form of action may be essential to reduce the property to the posssession of the estate.
There has been no failure of the State herein to assert the right to escheat, in the Surrogate’s Court nor to begin its action to reduce the land to possession.
*697 It is true that the • State could waive hut it has taken a contrary course.
Section 10 of article I of the New York State Constitution provides, in part, that “ All lands the title of which shall fail, from a defect of heirs, shall revert, or escheat to the people.”
Section 200 of article II of the Abandoned Property Law provides that, “ All lands the title of which shall fail from a defect of heirs, shall revert, or escheat, to the people.”
Section 201 authorizes the "Attorney-General to commence an action to recover the property whenever he has good reason to believe that the title to it has vested in the People of the State by escheat from a defect of heirs or otherwise.
Section 203 constitutes a judgment in such an action as conclusive against any and all persons.
Section 204 gives the Board of Commissioners of the Land Office power to sell or transfer the land after judgment. .
Further sections empower the board to release the interest of the State to such person or persons as it shall have determined to be entitled to it, make the property subject to trusts and incumbrances to which it would have been subject if it descended and provide for payment of claims against the State when a petition has been filed within fifteen years of the date of entry of the final judgment.
Writing of article I, section 10, of the New York State Constitution, in Matter of People (Melrose Ave.), (234 N. Y. 48) Judge Cardozo said: “ There is no room in this simple and sweeping mandate for an indeterminate interval of suspension or abeyance. The state as the ultimate owner is in effect the ultimate heir. [Citing cases.] Ejectment * * * or inquest of office £ does not constitute an escheat ’ * * ■*. It is the remedial expedient by which the fact of escheat is authenticated where there is uncertainty or contest. The fact and not the record is the origin of title.”
It has been held that on the death of decedent, intestate, without heirs, his real property <c at once escheated to the state, and the title thereto immediately vested in the state by operation of law.” (Smith v. Doe, 111 N. Y. S. 525; Croner v. Cowdrey, 139 N. Y. 471; Ulster County Savings Institution v. People, 249 App. Div. 43.)
An opinion of Attorney-General O’Malley in his Report for 1910 at page 977 treats of a case in which a decedent left no heirs and no will. The administrator petitioned for permission to sell her real estate for the payment of debts. He held that the *698 'Surrogate’s Court lacked jurisdiction to order the sale of her real property for the payment of debts as the State is not bound by a judgment or decree of any of its courts except in those matters where it has by statute conferred jurisdiction and consented to be bound.
Further, that the petitioner could not acquire the State’s title by reason of the decree of the Surrogate of King’s County to lands which absolutely vested in the State upon the failure of heirs.
The provision of section 236 of the Surrogate’s Court Act for making the People of the State of New York a party when a citation is issued when an order to sell, mortgage or lease real property is sought where it appears that the property may have escheated has for its purpose the giving of notice to the People and the opportunity to appear to protect the People’s rights.
Section 234 provides the purposes for which real property is subject to disposition and section 236 provides for the time and manner of its sale under section 234.
The respondent asserts that the sale was ordered in the exercise of a wise discretion because of the poor condition of the . buildings upon the land and the lack of income from them feeling that it was the duty of the administrator to seek an order of sale.
These considerations cannot weigh against the assertion of an escheat and the objection to a sale by the State and we do not believe that the State’s title can be divested by an order of sale upon any grounds, in the face of objection by the State.
Since the'State has the duty to pay incumbrances and liens on. escheated lands no order to sell such lands should be made over its objection until it is afforded that opportunity. (Abandoned Property Law, § 212.)
The decree appealed from must be reversed on the law, without costs of this appeal to any party,1 and the proceeding dismissed, without costs.
All concur. Present — Taylor, P. J., Dowling, Harris, Larkin, and Love, JJ.
Decree reversed on the law, without costs of this appeal to any party, and proceeding dismissed, without costs.