NEWTON COUNTY, Arkansas *v.* Don WEST, Administrator, Estate of Sue S. MORAK, deceased; and Steve CLARK, Attorney General for the State of Arkansas

87-153                                    739 S.W.2d 141

Supreme Court of Arkansas
Opinion delivered November 9, 1987
[Rehearing denied December 14, 1987.]

*Thomas A. Martin*, for appellant.

*Steve Clark*, Att'y Gen., by: *R. B. Friedlander*, Solicitor General, for appellees.

ROBERT H. DUDLEY, Justice. The primary issue in this case is whether the decedent's estate escheated to the State of Arkansas or to the County of Newton. We affirm the probate judge's ruling that the property went to the State.

This is the fourth appeal involving this estate. *See Newton County v. West*, 288 Ark. 432, 705 S.W.2d 887 (1986); *Newton County v. Davison*, 289 Ark. 109, 709 S.W.2d 810 (1986); and *Adams v. West*, 293 Ark. 192, 736 S.W.2d 4 (1987). The facts necessary to an understanding of the primary issue now on appeal are simple. Sue Morak died intestate and without heirs in Newton County on July 8, 1984. At that time, estates escheated to the State. However, Act 703 of 1985, effective on March 28, 1985, changed the law so that estates now escheat to the County where the decedent resided at death. Ark. Stat. Ann. § 61-150 (Repl. 1971 & Supp. 1985), and Ark. Stat. Ann. § 62-1833 (Supp. 1985). The probate court order holding that there were no known heirs and that the estate must escheat was entered after the effective date of the act. The obvious issue is whether escheat occurs immediately upon the death of the intestate, or whether it occurs when the probate court enters its order finding the estate must escheat. While it is a question of first impression in Arkansas, courts in other jurisdictions have ruled both ways. *See generally*, 27 Am. Jur. 2d *Escheat* § 21 (1966); Annot., 23

A.L.R. 1237 (1922).

█ We hold that under our escheat statutes, title vests immediately. As Justice Cardozo explained in *Re Melrose Avenue*, 234 N.Y. 48, 136 N.E. 235 (1922):

> Ejectment. . . ., or inquest of office, "does not constitute an escheat." [Citations omitted.] It is the remedial expedient by which the fact of escheat is authenticated where there is uncertainty or contest. The fact, and not the record, is the origin of title.
>
> . . .
>
> Later scholarship has thought it the better view "that an inquest of office is only a proceeding to ascertain the title of the Crown by escheat, and not an essential condition to the vesting of such title, 'or else the freehold should be in suspense, which may not be.'"
>
> . . .
>
> Neither entry upon the land nor the judgment of a court is necessary, when the alien dies, to consummate the title. This has many times been held. [Citations omitted.] We think they remain unnecessary when the owner is a citizen. In neither case, of course, may the state enter with a strong hand, if its title is contested by one in peaceable possession. The statute gives a remedy in such circumstances by action of ejectment. [Citation omitted.] None the less, as in other cases of contested right, the judgment does not create the title which it registers.

Justice Cardozo was interpreting a State constitution which provided that, "all lands, the title to which shall fail from a defect of heirs, shall revert, or escheat to the people." Our statutes governing escheated estates by reason of defect of heirs are codified at Ark. Stat. Ann. §§ 61-149 and -150 (Repl. 1971 & Supp. 1985); and Ark. Stat. Ann. §§ 62-1801 to -1833 (Repl. 1971 and Supp. 1985). For ease of discussion, we set out the pre-1985 statute, and place the 1985 change in parentheses.

Ark. Stat. Ann. § 61-149 provides in pertinent part that the heritable estate of an intestate *"shall upon his death"* pass in

accordance with the tables of descent set forth in the statute. The last paragraph of this statute provides that if heirs capable of inheriting the estate cannot be found within the prescribed classes, then the intestate's property shall pass according to § 61-150. Ark. Stat. Ann. § 61-150 sets out three additional classes of potential takers, the third of which is the State (County):

> Third, if there be no person capable of inheriting under First or Second, the estate shall escheat to the state (county wherein the decedent resided at death).

Clearly, the legislature intended for these two statutes to operate in concert, and the introductory clause contained in § 61-149, stating that the heritable estate of an intestate "shall upon his death" pass in accordance with the statute, carries over into § 61-150.

Further, Ark. Stat. Ann. § 62-1801 provides:

> *When property escheats.*—If any person *die seized* of any real or personal estate, without any devise thereof, and leaving no heirs or representatives capable of inheriting the same, or the devisees be incapable of holding the same, and where there is no owner of real estate capable of holding the same, *such estate shall escheat to and vest in the State* (County wherein the decedent resided at death).

(Emphasis added.) This statute clearly ties escheat to the death of the person seized of the estate.

Ark. Stat. Ann. § 62-1810 (Repl. 1971) provides:

> *Proceedings for escheat of real property.*—When the prosecuting attorney for the circuit shall be informed or have reason to believe, that any real estate within his circuit hath *escheated* to the State (county), and such estate shall not have been sold, according to law, within three [3] years after the death of the person last seized, for the payment of the debts of the deceased, he shall file an information, in behalf of the State (county), in the circuit court of the county in which such estate is situated, setting forth a description of the estate, the name of the person last lawfully seized, the names of the terre-tenants, and persons claiming the estate, if known, and the facts and circum-

stances in consequence of which such estate is claimed to have *escheated* and alleging that, by reason thereof, the State of Arkansas (county) hath right to such estate.

(Emphasis added.) This statute deals with the initiation of the process to judicially establish the fact of escheat, yet it refers to escheat in the past tense.

Ark. Stat. Ann. § 62-1811 requires any claimants listed in the information filed by the prosecuting attorney to appear at the next term of court to "show cause why such estate should not be vested in the State (county) . . . ." Similarly, Ark. Stat. Ann. § 62-1812 requires the court to publish for four weeks an order setting out the contents of the information and requiring all persons interested in the estate to show cause why it shall not be vested in the State (County). Any such claimants "may traverse the facts stated in the information, or the title of the State (county) to the lands and tenements therein mentioned." Ark. Stat. Ann. § 62-1813. With these statutes, as well as others to be mentioned subsequently, the legislature established a procedure by which the State's (County's) claim to title may be contested.

Further, Ark. Stat. Ann. §§ 62-1816 and -1818 simply provide for the form of the judgment in cases where the fact of escheat has been judicially established in favor of the State:

> 62-1816. *Judgment for state* (county)—Costs.—If, after the issues are tried, it appears, from the facts found or admitted, that the State (county) hath good title to the lands and tenements in the information mentioned, or any part thereof, judgment shall be rendered that the State (county) be seized thereof, and recover costs against the defendant.

> 62-1818. *Form of judgment for state* (county) —*Effect.*—When any judgment shall be rendered that the State (county) be seized of any real estate, such judgment shall contain a description of such estate and shall vest the title in the state (county).

As Justice Cardozo explained, "as in other cases of contested right, the judgment does not create the title which it registers." *Re Melrose Avenue*, 234 N.Y. 48, 136 N.E. 235, 237 (1922).

Finally, Ark. Stat. Ann. §§ 62-1823, -1825, and -1826 establish a procedure by which claimants who were not parties to the earlier proceedings, where title was judicially established to be in the State (County), may still divest the State of its interest if they are successful in establishing their claims to the property. The time limit within which they may do so is measured in terms of "seven years after the death of the intestate," not seven years after the judicial confirmation of the State's interest in the property.

■ Summarizing, in the instant case the probate court was correct in finding that escheat occurred immediately upon the death of Ms. Morak on July 8, 1984. Since her estate escheated prior to March 28, 1985, the court was also correct in determining that Act 703 did not apply and that the estate therefore escheated to the appellee State, and not to the appellant County. The clear expression of legislative intent that estates escheating prior to March 28, 1985 were to go to the State, and our holding that escheat occurs immediately upon death, makes it unnecessary to address appellant's arguments that Act 703 should be given retroactive effect.

The prosecuting attorney for the district which includes Newton County apparently recognized that the County and the State had conflicting interests. While he testified that he thought under the 1985 Act the property should escheat to the County, he did not formally take either side. Under these conditions the probate judge allowed the Attorney General to represent the State's interest. The appellant argues that the trial court's "ruling that the Attorney General was the proper officer to represent the State of Arkansas was a usurpation of the office of the Prosecuting Attorney and is clear error."

■ In *Parker v. Murry*, 221 Ark. 554, 254 S.W.2d 468 (1953), we wrote that the office of Attorney General is a constitutional one, but that the duties are statutory. We then interpreted Ark. Stat. Ann. § 12-701 (Repl. 1979) to mean that the Attorney General could represent the state in a civil suit when his services were judicially found to be "necessary and desirable." The trial court found his services to be necessary and desirable in this case.

■ The prosecuting attorney was faced with a conflict

between the interest of the County and the interest of the State. He did not formally represent either entity. The County hired an attorney to represent it, and the State was without representation. Under such circumstances, the finding that it was necessary and desirable for the Attorney General to represent the State was correct.

We note that the Attorney General has not attempted to do any of the acts which are statutorily reserved to the office of prosecuting attorney, such as filing an information of escheat of property. *See* Ark. Stat. Ann. § 62-1810.

Affirmed.