STATE OF TENN. *ex rel.*, COMPLAINANT, APPELLANT, *v.* ROGERS CALDWELL *et al.*, DEFENDANTS, APPELLEES.

(*Jackson*, April Term, 1931.)

Opinion filed July 18, 1931.

L. D. Smith, Attorney-General, and Nat Tipton, Assistant Attorney-General, for complainant, appellant.

W. E. Norvill, Jr., for defendants, appellees.

Mr. Justice Chambliss delivered the opinion of the Court.

This bill alleged that Caldwell was indebted to the State by reason of having executed as surety bonds to secure payment of deposits made by the State in certain banks which had become insolvent and had failed to pay the deposits after demand; that Caldwell was insolvent, and was indebted to numerous other creditors who were threatening to sue him and attach or otherwise impound his property, which was described; that the State as the sovereign was entitled to priority in his assets and that unless restrained he would dispose thereof. The bill prayed for an injunction restraining other suits, and for a receiver and that the bill be sustained as a general creditors bill, and all other creditors be required to file their claims in this cause. It appeared from the allegations of the bill that other suits had been brought by the State against Caldwell on account of this indebtedness and were then pending.

The Chancellor sustained a demurrer because, "the complainant does not show itself to be a creditor of any class permitted either by the general rules of equity practice or by our statutes to file a general creditors bill and impound all the property of the defendant, an individual, for the benefit of itself and such other creditors

as might become parties thereto;" and, also, "that the bill cannot be maintained as a bill to collect the complainants alleged obligations because the bill shows on its face there are prior suits pending for such recoveries in this Court and Part One of the Chancery Court."

In this Court counsel for the State present only the question of the right to maintain the suit against Caldwell as a general creditors bill, apparently conceding that otherwise the bill cannot be maintained in view of the pendency of other suits on the same indebtedness.

 We are constrained to concur with the Chancellor in holding that the bill may not be maintained as a general creditors proceeding. A fundamental applicable distinction is this, that general creditors bills are in their nature suits *in rem* rather than *in personam*. Whether or not such a bill will lie is determined not so much by the character of the defendant debtor, whether a corporation, partnership or individual, as by the nature of the relief sought. General creditor's suits are directed at particular property, rather than the person of the debtor, to subject such property, and distribute the proceeds according to the rights and priorities of all creditors who have an interest therein.

"Creditor's bills, in their most comprehensive sense, are bills in equity by creditors to enforce the payment of debts out of the property of debtors, under circumstances which impede or render impossible the collection of the debt by the ordinary process of execution." 5 Ency. Pl. & Pr., 391.

"They are in the nature of proceedings *in rem*, rather than *in personam*, and are used to make effective a judgment held by a creditor against the property of the debtor which is covered up or in some way involved."

*Houghton* v. *Axelsson,* 64 Kan., 274. And see 15 C. J. at p. 1382.

■ They are ancillary rather than original proceedings, brought to reach and subject assets and distribute the proceeds among those who by judgments previously obtained, or liens or priorities existing, have rights in common therein.

Jurisdiction of the *res,* in that case the assets of an insolvent corporation, was recognized by Mr. Justice LURTON, in *Peck* v. *Elliott,* 24 C. C. A., 425, 79 Fed., 10 (approved by Mr. Justice TAFT in *Cunningham* v. *Cleveland,* 39 C. C. A., 211, 98 Fed. 657), as the basis of the power of the Court of equity to bring before the court all debtors and creditors and make all proper orders in connection therewith.

■ Counsel for the State frankly concede a dearth of authority directly dealing with "the right to maintain a general creditor's bill against an individual," etc. As already pointed out, the right is determined not so much by the character of the party defendant, whether corporation, partnership, or individual, as by the nature of the relief sought, whether to reach and subject and distribute the proceeds of a thing, certain property, or to obtain a personal judgment. The statement relied on from Mr. Gibson's Suits in Chancery (Chambliss Ed.), Sec. 1031, Note 2, "This owner or common debtor may be a corporation, partnership, or individual," and also similar statements, referred to by Mr. Gibson, from *Bank* v. *Haselton,* 15 Lea, 230, and 1 Pomeroy's Equity, Sec. 410, are to be considered with this distinction in mind. Mr. Gibson's treatment of the subject as a whole indicates that he had it in mind. The caption of his chapter discussing the subject reads, "Suits by General Creditors

for their *pro rata* of an Insolvent Debtor's Property,"
and under the sub-head, "When a General Creditor's
Bill will lie" he says, "Whenever there is a common
fund which a Court of Equity will distribute ratably
among all the creditors of the owner of that fund, then
any one of the creditors may file a bill on behalf of him-
self and all other creditors of said owner against said
owner, in order to have the fund prorated among such
creditors." So, every illustration he gives is so restricted,
that is, to a common fund. Individuals may have made
fraudulent conveyances, subjected their property to liens,
have become insolvent decedents, etc., etc. But no il-
lustration is given, or precedent cited, of a general cred-
itor's suit in equity where this common fund element is
lacking.

Looking to the section cited in Pomeroy, it will be seen
that the sub-head reads, "Settlement of Insolvent Es-
tates—Marshaling of Assets," he says: "Another re-
markable and most just application of the principle, often
leading to results very different from those produced by
the operation of legal rules, may be seen in all those in-
stances where a court of equity acquires jurisdiction,
from any cause, to wind up, distribute, or settle an estate,
property, or fund against which there are a number of
separate claimants. One example is that of settling the
affairs of an insolvent partnership, corporation, or in-
dividual debtor in a creditor's suit brought by one on
behalf of all other creditors, where the assets are not
sufficient to satisfy all demands in full; the court always
proceeds upon the principle that equality is equity, and
of apportioning the property *pro rata* among all the
creditors."

He gives two illustrations, one of a partnership fund upon the death of a partner, and the other of the administration of the estates of deceased persons. And in harmony with this view in Section 429 he lays down this general principle:

"The fundamental theory of the remedial action of equity is, that it deals with specific and identified land or chattels, or specific funds, whether consisting of securities and other things in action or of money, and it seeks to determine, declare, and maintain the estates, interests, and·rights of the litigant parties in and to such identified lands, chattels, or funds."

We find no authority which recognizes the right to bring a general creditor's suit under circumstances here presented, by a creditor without judgment or other lien, and not to subject and distribute the proceeds of any specific assets or fund.

It is submitted on the brief for the State that (1) the State has a preferential claim against all of the debtor's property in application of the Sovereignty prerogative rights recognized by this Court in *Fidelity & Guaranty Co.* v. *Rainey*, 120 Tenn., 357, and *Maryland Casualty* v. *McConnell*, 148 Tenn., 660, and that (2) this right operates as a lien so as to justify a general creditor's bill.

If it should be conceded, which we are far from deciding, that such a far reaching extension of this doctrine of Sovereign prerogative would be justified, we are not persuaded that there is precedent or authority for recognizing such a contingent and unascertained surety claim as is here asserted as the basis for maintaining in equity a general creditor's proceeding. Not only is there no judgment, but the extent or amount of the claim is un-

determined, and at present impossible of determination, and not only is there no fixed lien, but the claim of priority or preference is at least in grave doubt. Moreover, on the facts and theory of the bill, in view of the size of the claim asserted and the relatively small volume of the debtor's assets, general creditors could have no possible interest in common with the complainant. A theory of a general creditor's suit is that there are others than the party bringing the suit who have like claims, or who have at least some claim against the common fund sought to be subjected and distributed. Here the opposite is alleged, (1) that the State alone has a lien or prior claim against the assets described, and (2) that its claim is largely more than the value of the assets.

This suit is not one brought to invoke equitable aid in order to bring about a ratable distribution among claimants, but to assert a preferential claim which the allegations clearly show would cut off all others from participation in the debtor's assets. In no sense does the complainant sue on "behalf of himself and of all the other creditors of said owner." He does not seek an equitable distribution, but an exclusive appropriation of the debtor's assets. We think an essential of the basis for a general creditor's bill in equity is therefore lacking.

The decree of the Chancellor is affirmed.