SHOEN, et al, Respondents, v. SIOUX FALLS GAS CO., et al, Appellants.

(261 N. W. 393.)

(File No. 7705-7706.   Opinion filed June 8, 1935.)

*Judge & Chapman,* of Sioux Falls, and *John T. Beasley,* of Terre Haute, Ind., for Appellants.

*Danforth & Davenport,* of Sioux Falls, for Respondents.

ROBERTS, J. Defendants have appealed from orders overruling their separate demurrers to the complaint.

The allegations of the voluminous complaint necessary to an understanding of the controversy may be summarized as follows: The defendant corporation is engaged in the business of selling gas

for lighting and heating purposes in the city of Sioux Falls. Defendant Whiteman is its vice president and general manager, and is the only officer and managing agent within the state. Plaintiffs are creditors of defendant corporation, and bring this action in behalf of themselves and all other creditors who have a common interest. The ownership and control of the capital stock of the defendant Sioux Falls Gas Company passes through certain intermediate holding companies to the Associated Gas & Electric Company, controlled by a group of persons who through interlocking directorates of this and other holding companies have control of approximately two hundred public utility companies as the basis of such pyramid structure. The object and purpose of this pyramid structure "has been and is to formulate, perpetuate and carry on schemes and projects for the sale and marketing of spurious, fictitious and 'watered' stocks and securities." The Associated Gas & Electric Company has uniformly pursued the scheme of selling, or attempting to sell, its securities to people of the communities where the basic companies operate, and by carefully designed propaganda led persons to believe that the securities offered are those of the basic company within the community. The Associated Gas & Electric Company prepared and furnished to the defendant gas company forms of convertible debenture certificates "for the purpose of cheating and defrauding the purchasers thereof, of leading the purchasers to think and believe that they were receiving a bona fide and valuable security when, in fact, such purchasers were receiving a security of no substantial value whatsoever, and of inducing such purchasers to part with their money for securities which were and still are substantially worthless." The certificates issued to the plaintiffs and made a part of the complaint by annexed copies contain provisions and conditions which plaintiffs allege were designed to deceive and render them of substantially no value, but we deem it unnecessary to a determination of this appeal to set them forth. The defendant gas company enlisted the aid of its officers, agents, and employees in a campaign to sell these certificates in the city of Sioux Falls and vicinity. These persons, pursuant to authorization and direction from defendant company, represented to prospective purchasers that the certificates were secured by the assets of the Sioux Falls Gas Company, and that such company was prepared and would pay to the holders at any

time the full face value of any certificate issued less in some instances a small transfer charge, and the "sales campaign was so conducted and carried on that the purchasers and prospective purchasers did not have any opportunity whatsoever to inspect certificates before purchasing same." While the sales campaign was in progress, defendant company complied with such agreement, but, since the conclusion thereof, has declined and refused to comply. Plaintiff and other persons "fully believing, relying and acting upon the aforesaid representations and statements and particularly believing, relying and acting upon said statement and assurance that the Sioux Falls Gas Company would at any time upon request take over, purchase and cash such certificates," were induced to make purchases. The face value of certificates sold to residents of Sioux Falls and vicinity through the efforts of defendant company is approximately $500,000, which is substantially the total replacement value of the assets of defendant company, less depreciation, but substantial items of its properties are obsolete and of no appreciable market value, and the greater part of the remaining properties consists of pipe lines for the transmission of gas which have a value only in connection with the gas business. Defendant company operates under a franchise granted by the village of Sioux Falls in 1883 and purporting to extend for a period of 99 years. The governing body of the city of Sioux Falls has taken the position that the franchise is void on the ground that the village had no power to grant the franchise, and, under all of the circumstances existing, the fair, reasonable, and market value of the property and assets of defendant company does not exceed $100,000, which is entirely inadequate to meet the claims of plaintiffs and other creditors. The property of defendant company is not encumbered and no bonds are outstanding, but the Associated Gas & Electric Company, in pursuance of a policy that it is now following, may proceed to encumber such property and deprive plaintiffs of an effective remedy. A proceeding against the Associated Gas & Electric Company is not adequate, for the reason that said company is a foreign corporation and is, as plaintiffs are informed and believe, virtually insolvent, unable to meet its dividends on its various issues of stock, and utterly unable to meet its obligations to plaintiffs and others similarly situated. The Associated Gas & Electric Company has no property in the state, and the expense to each of the plaintiffs

of proceeding in a foreign jurisdiction to prosecute their claims individually would be prohibitive. Defendants are continuously transferring to the said holding company or subsidiaries thereof outside of this state large sums of money belonging to defendant Sioux Falls Gas Company, and it is necessary, in order to protect and conserve the rights of plaintiffs and others similarly situated, that a receiver of all the property, assets, affairs, and business of defendant be appointed with power to operate the business pending final determination and upon such determination to liquidate the property and assets of the company and to distribute the proceeds equitably among creditors.

The prayer of the complaint is that the certificates be adjudged to be obligations of the defendant company; that a receiver be appointed; that the assets be liquidated and distributed pro rata among creditors; and that defendants be enjoined pending final determination of this action from marketing or otherwise disposing of assets and placing them beyond the jurisdiction of the court.

■■ Plaintiffs contend in support of the rulings of the trial court upon the demurrers that the complaint states a cause of action in the nature of a creditors' bill, apparently conceding that the complaint cannot otherwise be sustained. The jurisdiction of equity to entertain creditors' suits or bills had its origin in those instances where relief by execution at common law was ineffectual. Pomeroy Eq. Juris. (2d Ed.) § 2294. The nature, purpose, and scope of such a suit is to bring into exercise the equitable powers of a court to set aside a fraudulent encumbrance or conveyance preventing or hindering an execution at law or to compel the discovery and application of equitable assets or property to the payment of debts. Feldenheimer v. Tressel, 6 Dak. 265, 43 N. W. 94; note, 90 Am. Dec. 288. Proceedings by creditors of an insolvent corporation for the purpose of securing the distribution of assets are sometimes designated as creditors' suits or bills, 15 C. J. 1382; C. C. Wyman & Co. v. Farmers' Elevator Co., 57 S. D. 377, 232 N. W. 259.

It is urged by respondents that it has become the settled rule in this state that the assets of an insolvent corporation constitute a trust fund for the payment of its debts; that the regulation and enforcement of trusts is one of the original and inherent powers of

a court of equity; that jurisdiction is not necessarily taken away by the fact that a party has a remedy at law; and that the remedy of creditors of such a corporation is by action in the nature of a creditor's bill. Several cases are cited, and among them are Adams & Westlake Co. v. Deyette, 8 S. D. 119, 65 N. W. 471, 31 L. R. A. 497, 59 Am. St. Rep. 751; Portland Consol. Min. Co. v. Rossiter, 16 S. D. 633, 94 N. W. 702, 102 Am. St. Rep. 726; Furber v. Williams-Flower Co., 21 S. D. 228, 111 N. W. 548, 8 L. R. A. (N. S.) 1259, 15 Ann. Cas. 1216; Lamro State Bank v. Farmers' State Bank of Winner, 34 S. D. 417, 148 N. W. 851. Language has been used to the effect that the assets of an insolvent corporation are a trust fund for the benefit of creditors, but a trust in the strict sense of the term is not intended. In the case of Smith v. McCowan, 60 S. D. 504, 244 N. W. 891, 892, which was an action by the superintendent of banks for the return of securities transferred to the defendant out of assets of the bank immediately prior to the taking of possession of the bank for purposes of liquidation, this court, referring to the so-called trust fund doctrine, said:

"The truth probably is, as pointed out in Pomeroy's Equity Jurisprudence (4th Ed.) § 1046, that we are dealing here with one of those situations 'which are not, in any true and complete sense, trusts and can only be called so by way of analogy or metaphor,' and that the language of trust is used merely as a strong mode of expressing the doctrine that an insolvent corporation, at least after a certain stage of its insolvency is reached, and as distinguished from an individual (see section 2039, R. C. 1919), cannot transfer its money or property to one creditor so as to prefer him over others, in the same class. To that doctrine this court has been committed for some thirty-seven years; we do not think we ought to repudiate it now. It is probably not very material whether or not we continue, as we have previously done, to phrase the doctrine in the language of trust. Certainly it is harmless so to do if it be once understood that a true and complete trust, in every sense of the word and for all purposes, is not thereby intended."

The officers of a corporation in a sense act in a fiduciary capacity with respect to corporate properties, but as between the corporation and its creditors a direct and express trust does not exist. Hence creditors of a corporation cannot maintain a suit upon the ground that they have a distinct equitable right to enforce.

The right of creditors to maintain an action in the nature of a creditors' suit where a corporation has become insolvent and there is no longer a reasonable expectation of recovery and the dealings with the assets of the corporation must be deemed to be in contemplation of insolvency, we are not required to consider. If the defendant corporation is insolvent, facts are not alleged showing that the corporation has reached such stage of insolvency when transfers or payments by it will be deemed preferential. Smith v. Mc-Cowan, supra.

Plaintiffs have neither a judgment nor a lien, but claim to be contract creditors of defendant company. When the law is administered by separate tribunals, it is the established doctrine that a court of equity will refuse its assistance, unless the creditor has ascertained the amount of his debt by reducing it to judgment and an execution thereon has been returned unsatisfied. The reasons usually given for such holding are that a judgment with execution returned unsatisfied is the best evidence of the debt claimed and that law tribunals should adjudicate legal claims. Fidelity Savings & Loan Association v. Reese, 41 S. D. 546, 171 N. W. 812. Since the adoption of the Code practice, there has been a departure from this rule. This court in C. C. Wyman & Co. v. Farmers' Elevator Co., supra, an action for the administration of assets owned by and remaining with an insolvent corporation and brought in behalf of creditors generally who chose to avail themselves of the action, held that under the Code practice in this state a creditor may sue to recover a judgment for an indebtedness and in the same action avail himself of the equitable powers of the court to reach property of the debtor which should be subjected to the payment of his indebtedness. It is stated that this represents the trend in modern authority where the same court administers both legal and equitable relief. See, also, Corson Lumber Co. v. Millard, 61 S. D. 369, 249 N. W. 686. Plaintiffs in the C. C. Wyman & Co. Case were not mere simple contract creditors, but held mortgages against property of the elevator company, though inadequate to secure the amounts due them. The complaint, alleging insolvency, mismanagement, waste of assets, and dissension among directors and praying for the appointment of a receiver and the liquidation of assets and payment of debts, was held to state a cause of action in equity to which the appointment of a receiver

was merely ancillary, though the complaint may not have been strictly a creditors' bill. The present practice, however, recognizes that a plaintiff seeking equitable relief by way of an action in the nature of a creditors' bill must present facts which will entitle him to invoke such jurisdiction, dispensing merely with the necessity of obtaining a judgment in an independent action, and does not extend the rule to a situation where the remedial action does not deal with identified property or specific funds.

The purpose of the instant case is not to reach property of defendant company not available for legal levy and execution or to remove fraudulent transfers and hindrances to execution, but plaintiffs seek the appointment of a general receiver over all the assets of the company and, after liquidation, a distribution of the proceeds among creditors. This court said in the C. C. Wyman & Co. Case that equity under certain circumstances takes cognizance of proceedings to administer the assets of an insolvent corporation. Thus, where a corporation is not only insolvent, but has ceased to do business and has been abandoned by its officers and directors with no one to administer its affairs and apply same in satisfaction of debts, equity will administer the assets through a receiver upon the application of a simple contract creditor and apply proceeds in payment of debts. 14A C. J. 958; Nunnally v. Strauss, 94 Va. 255, 26 S. E. 580; Lacey v. Dayton Rubber Mfg. Co. (Tex. Civ. App.) 270 S. W. 916; Stockmen's Nat. Bank v. Calloway Shops, 41 Wyo. 232, 285 P. 146. The view has been expressed that the jurisdictional basis for such proceedings evolved from judgment creditor bills. Pennsylvania Steel Co. v. New York City Ry Co. (C. C. A.) 198 F. 721; Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763. See, also, Finney v. Bennett, 27 Grat. (68 Va.) 365; Glenn on Liquidation, §§ 154 and 161; 25 Col. L. Rev. 434. Where the end sought is the liquidation of the assets of an insolvent corporation and their equitable distribution among creditors, courts of equity upon the application of a simple contract creditor with the consent of the corporation have assumed jurisdiction. Brown, Bonnell & Co. v. Lake Superior Iron Co., 134 U. S. 530, 10 S. Ct. 604, 33 L. Ed. 1021; Pusey & Jones Co. v. Hanssen, supra; Gordon v. Washington, 55 S. Ct. 584, 79 L. Ed 1282, decided April 1, 1935.

It is apparent from what has been stated that an

action in the nature of a creditors' bill is a proceeding in rem. See Baird v. Meyer, 55 N. D. 930, 215 N. W. 542, 56 A. L. R. 175; Shuck v. Quackenbush, 75 Colo. 592, 227 P. 1041, 38 A. L. R. 259; State v. Caldwell, 163 Tenn. 77, 40 S. W. (2d) 1036. If the allegations of the complaint are sufficient to allege insolvency, we see no basis in the facts of this case entitling plaintiffs to maintain this action. Creditors as such have no interest in their debtor's property. The property of the latter can be administered in equity only where equity takes possession on some recognized principle of equity jurisprudence. The complaint fails to disclose any basis for equitable relief, and the court below erred in not sustaining the demurrers.

The orders appealed from are reversed.

POLLEY, CAMPBELL, and RUDOLPH, JJ., concur.

WARREN, P. J., not sitting.