𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

NUNNALLY & OTHERS *v.* STRAUSS & OTHERS.

January 28, 1897.     ·

1. INSOLVENT CORPORATIONS—*Equity jurisdiction at suit of simple contract credi-tor.*—A court of equity has jurisdiction to entertain the suit of a simple contract creditor who has no lien, brought for the purpose of administering the assets of an insolvent and abandoned corporation. *Finney* v. *Bennett,* 27 Gratt. 365, approved.
2. MULTIFARIOUSNESS.—Whether or not a bill is multifarious depends upon its allegations, and not upon its prayer. Where the plaintiffs have a common interest in the subject matter of the suit, the litigation grows out of one and the same transaction, the defendants have a co-extensive interest and liability, and can suffer no possible disadvantage from the frame of the bill, and a multiplicity of suits will be avoided, the bill cannot be said to be multifarious.

Appeal from a decree of the Chancery Court of the city of Richmond, pronounced May 10, 1894, in a suit in chancery, wherein the appellants "who sue for the benefit of themselves and all other creditors of the York Steel & Iron Company, who will come into this suit and share the benefit and expense of the same," were the complainants, and the appellees were the defendants.

*Reversed.*

The opinion of the court states the case.

*Pegram & Stringfellow* and *L. R. Page,* for the appellants.

*Christian & Christian* and *Leake & Carter,* for the appellees.

HARRISON, J., delivered the opinion of the court.

The York Steel & Iron Company was incorporated under
the laws of Virginia in December, 1890, its declared object
being "to acquire and hold real and personal property by
purchase, lease, or otherwise, in this or any other state; to
sell, lease, or in any legal manner, dispose of or encumber
the said property; to lay off any portion of its lands into
town or city sites, with lots, streets, alleys, parks and such
other improvements as it may deem advisable; to mine iron
or other ores or materials, and sell the same; to erect, ope-
rate and conduct iron furnaces, gas and water works, electric
plants, or to engage in and conduct any other manufacturing
or commercial enterprise; to lend and borrow money when,
and in the manner it may deem advisable." Its capital stock
was to be not less than one hundred thousand dollars, nor
more than one million dollars. The real estate to be held by
it was not to exceed in value the sum of four million dollars.

Seven citizens of Richmond constituted the charter members
of the company, who were its officers, directors, and only
stockholders from the time of the organization until the insti-
tution of this suit.

The bill in this case, which is filed by the appellants on be-
half of themselves and all other creditors of the York Steel
& Iron Company, alleges that the company gave out, through
its officers and directors, and by means of the mercantile
agencies of the country, that its minimum capital stock, viz:
$100,000, had been subscribed; that on the faith of said or-
ganization, and the sufficiency of its capital, and relying on
the responsibility, capacity, and fidelity of its incorporators,
complainants had sold to said company without other security
than a second mortgage, a large amount of valuable land
situated in York county, South Carolina, for which the com-
pany executed its notes to complainants, aggregating
$41,601.45, and assumed and undertook to pay three other
notes, aggregating $10,080.60; that no part of this large in-
debtedness has been paid, and that all effort to pay the same

had long since ceased. Complainants further allege "that at the request of the company their land was conveyed to one Samuel Proskauer, individually, who was one of the incorporators of the company, and by him conveyed to the company in consideration of five dollars, and in full discharge and payment of his subscription to three thousand three hundred and fifty shares of the capital stock of the company, at the par value of one hundred dollars, and the further payment by the company of sixty-five thousand dollars secured by the deed of trust upon the property; that through the fraud and mismanagement of the company in not collecting its stock subscriptions, and paying off the prior mortgages on its real estate, said lands have already, in large part, been sacrificed at sales to satisfy the preferred creditors, and those unsold will not be sufficient to afford complainants any relief from that source; that the only assets of the company complainants can look to for the payment of their debts are its unpaid stock subscriptions which the company refuses to collect and apply to that purpose. Complainants allege that Samuel Proskauer, one of the incorporators, was wholly insolvent at the time of the organization, and has continued to be ever since; that the other six members of the company were solvent, and that an examination of the books of the company discloses that each of the six solvent members subscribed to two shares of the capital stock at the par value of $100, and that Samuel Proskauer, the insolvent member, subscribed to thirty-three hundred and fifty-two shares each of the same par value. Of the stock thus subscribed, each incorporator paid thereon $460, no part of which was applied to the payment of debts. Complainants further allege that, as the lands were in the first instance conveyed to Samuel Proskauer, but only and solely as trustee for the company, so the three thousand three hundred and fifty shares were subscribed for by said Proskauer as trustee for himself and the other incorporators in equal proportions; that the same is the stock of

all the incorporators, and that the subscription price of $100 per share still remains almost wholly unpaid.

Complainants, upon disclosures contained in the books of the company, further aver and charge that the organization of the company, and the request by the incorporators that the lands be conveyed to Samuel Proskauer, individually, as if he were the real owner; that subscription to the capital stock of the company purporting to be for $200, by each solvent incorporator, and for $335,200 by the only insolvent incorporator, the statements given out through the mercantile agencies and otherwise that the minimum capital stock of the company had been actually subscribed, and especially the resolution of the company adopted March 14, 1891, to buy of said Samuel Proskauer all of its own property at the enormous price of five dollars, and thirty-three hundred and fifty shares of the company's stock at the par value of $100, and the further payment of sixty-five thousand dollars, with interest until paid, was all one scheme, conceived, concocted, and carried out by the incorporators for their joint, mutual, and equal advantage, but with the fraudulent design and purpose of shielding all of them who were solvent from any liability in case of a failure of their joint venture, and was designed and intended to defraud complainants and all other creditors of said company of their just debts.

Complainants further allege that the company is utterly insolvent unless the incorporators are required to pay the subscription made in the name of Proskauer, but secretly for their benefit, which they now repudiate; that there has been no meeting of the stockholders or directors of the company held since February 13, 1893; that the company does not intend to collect the unpaid subscriptions, due alone from themselves; that the enterprise has been long since practically abandoned, and that, by reason of the fraud and mismanagement of the officers and directors, they are all jointly and severally liable with the company to complainants and all·

other creditors of the company for their debts. The York Steel & Iron Company and its officers, directors and stockholders are made parties defendant.

The prayer of the bill is that the court will ascertain what debts are due, or have been contracted in the name of the company; that it will decree and declare Samuel Proskauer a trustee for himself and the other six incorporators in equal proportions in the subscription for thirty-three hundred and fifty shares of the capital stock of the company, and will either, by a receiver to be appointed in the cause, or in some other way deemed proper by the court, require said incorporators to pay the same, or so much as remains due thereon, or as may be necessary to pay the debts, costs, &c.; or if the court shall consider that the directors, by their fraudulent and negligent management of the affairs of the company, have made themselves personally liable to complainants and other creditors, it will decree against them directly, as well as against the company, in favor of complainants and other creditors, for all debts and costs appearing to be due. Or if the court shall be of opinion that the corporation was in fact conceived, organized, and used solely as a cloak or shield to protect all of the incorporators who were solvent from liability or risk in the event of failure of their enterprise, and thus to defraud complainants and all others, and that said incorporation should therefore, not be regarded, but brushed aside, and said incorporators held directly liable by reason of their fraud, then that the court will decree directly against all the incorporators individually, in favor of complainants and all the creditors, for the full amount of their debts and costs, and for general relief.

To this bill the defendants demurred, and the chancery court sustained the demurrer and dismissed the bill, and the case is here upon an appeal from that decree.

The first question presented for decision is whether or not a simple contract creditor, who has not reduced his claim to

judgment, and has no lien, can sue a corporation in equity, have a receiver appointed, take charge of its assets, and have them administered and applied to the payment of its debts.

It is certainly true as a general rule that where a creditor has no lien on or interest in the property to be·subjected, he must obtain judgment and execution against his debtor before he can proceed in equity to subject his property, and this is usually as true in the case of corporations as it is in the case of individuals. The rule, however, is different in cases like that under consideration. The demurrer admits the allegations of the bill, from which it appears that the corporation here proceeded against is insolvent, has ceased to do business, has been abandoned by its officers and directors, and has no one to administer its affairs or realize on its assets, and apply the same to the satisfaction of its debts.

In the case of *Finney* v. *Bennett,* 27 Gratt. 365, this court has very aptly likened an insolvent corporation that has ceased to do business to an insolvent decedent's estate, and has argued with much force that, upon the same principle that a court of equity administers a dead man's estate under a bill filed by simple contract creditors for that purpose, it should also administer the affairs of a corporation that has ceased its life work. That was the case of an insolvent and abandoned banking institution. Its assets remained in the hands of one or more of the officers last elected by its directors, but no one had been appointed by the directors or stockholders to take charge of its assets and wind up its affairs, and it was held proper under the circumstances, by analogy to the administration of a dead man's estate, at the suit of simple contract creditors who had no lien, for a court of equity to take charge of the affairs of the abandoned corporation, administer its assets, and apply the same for the benefit of its creditors. See also *Bank of St. Mary's* v. *St. John,* 25 Ala. 566.

In the case at bar other grounds of equity jurisdiction are suggested besides those held sufficient in the case cited. It

is, however, unnecessary to place this decision on any other ground than that held sufficient in the case of *Finney* v. *Bennett*, where, as already stated, the rule is laid down that a court of equity has jurisdiction to entertain the suit of simple contract creditors who have no lien, brought for the purpose of administering the assets of an insolvent and abandoned corporation and, as those conditions are admitted to exist in the case at bar, the jurisdiction here must be maintained.

The case of *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371, cited and relied on by defendants, is not analogous in essential features to the case at bar. It does not clearly appear from the report that the corporation there sued was insolvent; nor does it appear that it had been abandoned by its officers and directors, and that they had refused to take any step looking to the plaintiff's relief. And lastly, it appears that there was another suit pending in which the plaintiffs in that case might have sought and obtained relief without bringing, as they did, an independent suit.

It is further contended by the defendants that the bill is multifarious; that, in its prayer, inconsistent relief is asked for; and that for this reason the demurrer should be sustained.

Whether or not a bill is multifarious depends, it is said, upon its allegations, and not upon its prayer. No reason is perceived why under this bill the court cannot conveniently ascertain the rights of all parties, plaintiffs and defendants, and administer justice between them according to the very right of the case. The plaintiffs have a common interest in the subject matter of the suit, and the defendants have a coextensive common interest and liability. The litigation grows out of one and the same transaction, and the relief asked for in relation to each is of the same general character.

It is true the right of the plaintiffs to recover is placed by the bill upon several grounds, all however relating to the same subject matter, and the prayer is for relief in the alter-

native aspects presented by the bill, according as the court may think just and right. There can be but one satisfaction of the plaintiffs' claim under the bill, and the defendants are given plainly to understand the case they have to meet. The defendants can suffer no possible disadvantage from the frame of the bill, and a number of suits may be avoided by the proceeding in its present form.

For the foregoing reasons the decree sustaining the demurrer and dismissing the bill is erroneous, and must be set aside, and this court will enter an order overruling the demurrer, and remanding the case to the court below to be there proceeded with to a final decree upon the merits.

BUCHANAN, J., dissenting:

I am unable to concur in the opinion of the court. It seems to me that this case can be distinguished from *Finney* v. *Bennett.* In that case the defendant corporation was not only insolvent, but its assets were in such condition that a receiver was necessary to take charge of them to protect the creditors from loss. In this case no such necessity is shown, and no receiver is asked for. In that case the creditors were very numerous, and a multiplicity of suits was avoided. In this case, while the bill is filed on behalf of the plaintiffs and all other creditors who will contribute to the costs of the suit, there is no allegation that there are any other creditors, or that the defendant company owes any other debt than the one sued for.

The grounds stated in the bill for equitable relief are not sufficient, in my judgment, to bring this case within any of the exceptions to the general rule, that a creditor cannot file a bill in equity to subject the assets of an insolvent corporation to the payment of his debt until he has obtained a lien, or exhausted his remedy at law.

KEITH, P., concurs with *Buchanan, J.*

*Reversed.*