Argued May 4, reargued November 1, 1961. Order denying peti-
tion to intervene reversed, decree of distribution modi-
fied and cause remanded February 28, petition
for rehearing denied April 24, 1962

REALTY ASSOCIATES *v.* WOMEN'S CLUB ET AL,
STATE LAND BOARD

369 P. 2d 747

*Catherine Zorn,* Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief was Robert Y. Thornton, Attorney General, Salem.

*Lamar Tooze,* Portland, argued the cause for respondents other than Portland Trust Bank. With him on the brief was William E. Tassock, Portland.

484

Before McAllister, Chief Justice, and Warner, Perry, Sloan, O'Connell, Goodwin and Lusk, Justices.

LUSK, J.

The plaintiff, Realty Associates of Portland, Oregon, a corporation (hereinafter called "the corporation"), commenced this suit in equity on November 15, 1945, for the purpose of obtaining an adjudication of the rights of its creditors and the winding up of its affairs.

With minor exceptions, the creditors were the holders of written obligations of various descriptions issued by the corporation. Among the defendants named in the complaint were Women's Club, a charitable corporation, and Ellis Hughes Martin. They were sued individually as holders of obligations known as "Series 1 bonds" and as representatives of all holders of Series 1 bonds. The defendants, Walter E. Church and Lillian G. Blue (as well as Women's Club), were sued as holders of obligations known as "debenture bonds" (hereinafter called "debentures") and as representatives of holders of all debentures. There were other defendants, but their rights are not involved on this appeal. The persons named (except Martin, who did not appear) will be hereinafter referred to as "the defendants."

The assets of the corporation were not sufficient to pay the creditors in full and, under direction of the court, pro rata payments were made to creditors who filed their claims pursuant to a decree entered

by the court on August 16, 1946, the provisions of which will be hereinafter more specifically referred to.

The present controversy arises out of the claim of the state of Oregon, acting by and through the state land board, that a fund in excess of $5,000 remaining in the hands of a trustee designated by the court to take possession of the assets of the corporation and distribute them among its creditors, remained unclaimed at the end of some fifteen years after the institution of this suit and that the state was entitled to the fund as an escheat or as abandoned property under the Uniform Disposition of Unclaimed Property Act (ORS 98.302 et seq.). The state sought the right to intervene in this proceeding in order to establish its claim, but its petition was denied by an order entered April 12, 1960. On the same day the court entered an order providing for the distribution of the fund among claimants who had already been paid their pro rata shares. The state has appealed from both these orders.

Two questions are presented: 1. Are unclaimed dividends declared by an insolvent corporation or its successor-trustee, in the process of liquidation and winding up, under the supervision of the court, the property in equity of creditors who have not been located after a long lapse of time and diligent efforts to find them, or may they be awarded to other creditors who have filed their claims but have not been paid in full; and 2. If such moneys may not properly be so redistributed is the state entitled to them?

In the following recital of the proceedings references to obligations issued by the corporation other than the Series 1 bonds and the debentures will be omitted because it is only the rights of the holders of these instruments that are now involved.

The Series 1 (called "profit sharing") bonds provide that the proceeds realized from their sale shall be invested by the corporation in real estate and securities upon real estate and that out of the net profits derived from such investment there shall be paid semi-annually as a preferred dividend five per cent on the face value of the bond. There are further provisions for the payment of dividends in fixed fractional amounts from any surplus after payment of the preferred dividends and a portion provided to belong to the corporation.

The face value of Series 1 bonds is not in a fixed sum, but is determined by the amount paid by the investor as stated in a form of receipt appearing on the face of the instrument.

The debentures, of the face value of $100 each, are promises to pay to the bearer the principal sum at the end of ten years and semi-annual interest at the rate of five per cent per annum until paid. They are not secured.

The case was put at issue by the filing of answers by the defendants and after a hearing the court entered findings of fact and conclusions of law which were incorporated by reference into its decree of August 16, 1946. Among these findings were, in substance, the following:

The assets of the corporation derived from the sale of Series 1 bonds are held by the plaintiff solely for the purposes set forth in said bonds and are free and clear of claims of any other persons. The amount of such assets in the hands of the plaintiff at the time the complaint was filed is stated and also the amount available for payment to the holders of debentures and of two named general creditors, who were not

holders of any of the obligations issued by the corporation.

. Finding XXXV reads:

"In making the distributions herein found to be proper to the holders of the various classes of instruments and obligations issued or owing by the plaintiff, the funds available for such distribution, with respect to each type of obligation involved, are not sufficient to pay the full principal amount thereof, and the funds so available should, therefore, be equitably pro-rated upon the basis of the face amount of principal provided for in each such obligation, or called for by such each obligation, exclusive of any interest accrued and unpaid and not previously elected to be paid."

Inasmuch as distribution could not be made to the rightful owners of the various types of obligations issued by the corporation within six months after entry of the decree, the funds should be transferred at the expiration of that period to Title and Trust Company to act as trustee for a period of five years and to make distribution to the persons entitled in accordance with the terms of the decree, and if, at the end of such period, any part of the funds should remain undistributed, they should be disbursed as the court should thereafter direct.

Upon entry of the decree the corporation should, in advance of making any distribution, send a letter to the last-known address, as it appeared on the corporation's records, advising the holders of each type of obligation that distribution had been ordered by the court and that each holder should present the documents evidencing such obligations to the corporation for surrender and cancellation and receive the payments due him under the terms of the decree.

All persons having claims against the corporation should present them either to the corporation or to the successor-trustee within five years and six months from the entry of the decree, and any person failing to do so should be barred from asserting a claim, and a notice to this effect should be published once a week for four successive weeks in a newspaper of general circulation published in Multnomah County, Oregon.

"The sale of all assets formerly comprising the said Series 1 profit Sharing Bond Investment fund by the plaintiff be and the same hereby is ratified, confirmed and approved, and the trust and the relationship between the plaintiff and the holders of all Series 1 bonds be and the same hereby are terminated and dissolved, and the plaintiff, subject to the prior charges and expenses hereinafter provided for and subject to the later terms of this decree, is ordered and directed to make distribution of all monies in its hands declared as assets comprising said Series 1 bond fund to the holders of said Series 1 Bonds on a pro-rata basis in that proportion which the original principal amount of each bond of said holder bears to the total principal amount of all Series 1 Bonds outstanding as of the date of this decree.

\* \* \* \* \*

"Plaintiff be and it hereby is ordered and directed, subject to the payment of the prior charges herein otherwise provided for, to make distribution of the cash proceeds of its general assets (being the assets other than those hereinbefore otherwise directed to be paid, respectively, solely to the holders of Series 1 bonds and solely to the holders of Certificates of Ownership) prorata on each such obligation in that proportion which the principal amount of each such obligation bears to the total principal amount of all outstanding above described general obligations."

Title and Trust Company, a corporation, was appointed trustee to take charge and possession of all such funds as should remain in the corporation's hands undisbursed at the end of six months after the entry of the decree.

On July 20, 1953, Portland Trust Bank, which had succeeded Title and Trust Company as trustee under the decree, filed a petition with the court showing that on February 16, 1947, Title and Trust Company received from the corporation $54,236.10 representing undisbursed funds in the hands of the corporation at the expiration of six months from the date of the decree and that there had been distributed or deducted in fees by Title and Trust Company $36,633.78, leaving a balance of $17,602.32 remaining in its hands as of the expiration of five years from February 16, 1947. This balance was received by the petitioner Portland Trust Bank. Attached to the petition was an exhibit containing, as stated in the petition, "a list of obligation holders who have not made any claim with respect to said funds despite efforts on the part of Title and Trust Company to contact them together with their respective shares of said unpaid balance." The petitioner asked for instructions as to the disposition of the balance remaining in its hands. The exhibit to which the petitioner refers lists the names of holders of Series 1 bonds and of debentures, the number and amount of the several obligations owned by each holder, and the amount of the fund to which each is entitled stated in terms of percentages and dollars.

After a hearing on this petition the court, on October 19, 1953, entered an order extending for one year the time for filing claims. The order contained a direction to the trustee to "actively seek out the persons, their heirs, executors, or assigns, enumerated in Ex-

hibit 'A' attached to the petition of the Portland Trust Bank * * * and for this purpose, but without limiting the generality of the foregoing, said trustee is hereby directed and empowered to advertise and publish notices, to hire investigators, to send notices by letter, and in general, to do all things and perform all acts necessary, proper or convenient to carry out its trust, * * *."

A further order extending the time for filing claims for another period of one year was entered on April 8, 1955, in response to a petition of the trustee filed December 15, 1954, for instructions as to the disposition of the balance of the funds then in its hands. The court found, in recitals contained in the order, that through its efforts the trustee had located additional claimants and made substantial disbursements from the fund; that additional time should be provided in order that the trustee might continue its affirmative efforts to locate claimants to the fund; "and that upon expiration of said time further disposition of said fund should be made under the terms of and controlled by the decree entered on the 16th day of August, 1946, and that the foregoing is consistent with a fair interpretation of the provisions of Chapter 92, Oregon Laws 1943, amending 77-260 [77-262] O.C.L.A."

The statute referred to, which will be later considered, provides that upon the liquidation of a corporation, whenever it shall appear that any liquidating dividends or other credits remain unclaimed for a period of six months after the final dividend in such liquidation shall have become payable, the fund so unclaimed shall escheat to the state of Oregon.

On March 15, 1960, the state of Oregon, through the state land board, filed its petition for leave to intervene in the proceeding and to file its complaint,

tendered with the petition, setting forth its claim that the funds remaining in the hands of the trustee had escheated. This petition refers to a petition of the trustee dated April 2, 1959, and served on the Attorney General on March 1, 1960, but which apparently was not filed with the court until May 10, 1960. The trustee stated that it had made all reasonable efforts to locate the persons entitled to distribution of the fund and suggested that a final order of distribution should be made. A statement of account was attached to the petition containing, among other things, lists of the holders of debentures and Series 1 bonds who had not been paid their pro rata share and the amount of the undisbursed funds to which each was entitled.

On April 12, 1960, a hearing was held on the petition of the state land board. Counsel for the holders of Series 1 bonds and debentures appeared in opposition, and the court, after argument, denied the petition. On the same day the court entered another order providing, in effect, for the distribution of the remaining fund to claimants who had been partially paid, no claimant, however, to receive more than the amount of his original claim, and that the trust be continued for a period of six months to permit the filing of such claims. At the end of that time any funds with respect to which the trustee should be unable to make proper disbursement should be turned over to the state of Oregon acting through the state land board.

The solution of the question presented depends upon whether the fund in the hands of the court is held for the benefit of the creditors as a class or as individuals, each of whom is vested with an equitable interest in the fund. For reasons that will sufficiently appear, different considerations apply to the two classes of obligations involved.

492

The pleadings and the terms of the decree disclose that actually two funds were brought into court. They have been treated separately by the court and the trustee. One is a specific fund derived from the sale of Series 1 bonds and available for distribution to the holders of those obligations only. The other is a general fund, the sources of which are not identified, and which is available for distribution to the holders of debentures.

A copy of a Series 1 bond is set out in the margin.[①] ·

①

"PROFIT SHARING BOND

"The REALTY ASSOCIATES OF PORTLAND, OREGON, hereinafter called the Company, hereby acknowledges the receipt of the sum of ——————— Dollars, from ——————— and hereby issues this profit sharing bond for said amount.

"The net proceeds realized from the sale of profit sharing bonds and contracts therefor shall constitute the investment fund of this Company. This investment fund shall be invested, under the supervision of the Board of Directors of the Company, in such real estate and securities upon real estate as said Board of Directors may consider safe and profitable, in the City of Portland, State of Oregon, and other cities of the Pacific Coast.

"The Company hereby guarantees to divide the net profits realized on said investment fund, both from rentals and sales of its properties, semi-annually, on the first days of June and December of each year, upon surrender of the coupons hereto attached, as follows;

"First: Five per cent. (5%) per annum on the face value of issued bonds, of which this is one of a series, and on the actual amount paid on contracts for such bonds, to the holders thereof as a preferred dividend.

"Second: One-fifth of the net profits of said investment fund remaining after the payment of said preferred dividend shall be retained by the Company as a surplus fund, one-half of same to belong to the holders of this series of bonds, and the other one-half to belong to the Company.

"Third: One-half of the remainder of said net profits, after the disposition as above provided, shall be paid to the holders of these bonds as a further dividend, and the other one-half shall belong to the Company.

"Fourth: One-half of the net profits realized from said surplus fund shall be paid to the holders of these bonds as an additional dividend, and the other one-half thereof shall belong to the Company.

These instruments, appropriately designated "Profit Sharing", provide for the investment of the net proceeds derived from their sale in real estate and securities upon real estate and the payment of a preferred semi-annual five per cent dividend to the bondholders and for the retention of a surplus fund, one-half to belong to the bondholders and the other half to the company, together with the further division of profits realized from the surplus fund between the company and the bondholders. The Series 1 bonds are akin to certificates of preferred stock in a corporation or of an interest in a business, or so-called Massachusetts, trust. They do not provide, as is common in a Massachusetts trust, for a ratable sharing in the proceeds upon termination of the trust, 9 Am Jur 287, Business Trusts § 2; but such a provision would seem to be necessarily implied from the nature of the agreement, and the court by its decree of August 16, 1946, so treated the instruments.

Having these characteristics, the rights of the holders of these obligations on winding up of the corporation should not be held to be different from the rights of corporate stockholders and, as to the latter,

---

"The said contract holders shall be entitled to the preferred dividend only.

"This series is limited to an issue of Five hundred Thousand Dollars ($500,000).

"The salaries of officers and office expenses of the Company shall not be deducted from the bondholders share of gross profits. Only charges and expenses incident to the ownership and management of said real estate and securities upon real estate shall be deducted from the gross revenues therefrom.

"At all times during business hours the owners of these bonds shall be entitled to examine the books and records of said investment fund.

"At the end of each ten years new dividend coupons will be issued covering the next ten year period.

"This bond is transferable upon the books of the Company, without charge, upon proper assignment thereof."

the recognized rule is that an unclaimed share of a stockholder in the fund is not available for distribution to other stockholders.[2] *State v. Fidelity Union Trust Co.*, 25 NJ 387, 136 A2d 636; *In re Central N. J. Land &c., Co.*, 113 NJ Eq 332, 166 A 705; *In re Hull Copper Co.*, 46 Ariz 270, 50 P2d 560, 101 ALR 664.

In the case of *In re Central N. J. Land, &c., Co.*, supra, it was explained that when a corporation is a going concern and a dividend is declared it becomes a debt due from the corporation to the stockholders and that the money held to answer for the dividend is not a trust fund, but a part of the general corporate assets. On dissolution of the corporation, however, the situation is different. As to this the court said:

> "Upon dissolution of a corporation, the assets become a trust fund and the title of the stockholder becomes an equitable right to a distributive share therein. When distribution is decreed by this court, the general right of a stockholder to share in the assets merges in the decree, which is a judgment in favor of the stockholder for the amount due on his certificate. A certain fixed sum is then held in special and direct trust for each stockholder. *Bijur v. Standard Distilling and Distributing Co.,*

[2] A share of the capital stock of a corporation is "the interest or right which the owner has in the management of the corporation, in its surplus profits, and on dissolution, in all of its assets remaining after the payment of its debts." 18 CJS 620, Corporations § 194. See Loveland & Co. v. Doernbecher Co., 149 Or 58, 74, 39 P2d 668. The interest in the capital of the corporation acquired by the holders of Series 1 bonds is not in the entire capital, but, under the terms of those instruments, is limited to the assets derived from properties in which their contributions to capital were invested. The decree of the court allowed the claims of the Series 1 bondholders to be paid out of the fund so constituted, regardless of the claims of the general creditors. This has been with the entire acquiescence of counsel representing the general creditors (the debenture holders) and no issue has at any time been made of that departure from the general rule that on liquidation creditors are to be paid before stockholders.

*74 N. J. Eq. 546; affirmed, 78 N. J. Eq. 582.* I think that the action of the trustees in dissolution, whereby they set off to each shareholder $3 per share, had the same effect on the stockholders' rights as a decree of distribution. The trustees thereby entered into a special relationship of trust with each of the stockholders in respect to the sum so allocated. The receiver is merely a substituted trustee and holds title subject to the same trust. The stockholders, in respect to that distribution, are not mere creditors; the money set apart for them belongs to them severally in equity and is not available for general distribution among the whole class of stockholders." 113 NJ Eq at 334.

 The case of the debenture holders, however, stands upon different ground. They are simply general creditors. There is a singular dearth of authority upon the question as it relates to them. A diligent search has failed to discover any decision or any authoritative statement by a text writer bearing directly upon the question.

Cases cited in the briefs involving the rights of cestuis que trustent under a bond mortgage hold for the most part that such creditors have equitable, separate, and individual interests in the mortgaged property of an insolvent corporation and that the courts are without power to divest such creditors of their interests because they have not filed claims. *Brown v. Pennsylvania Canal Co.,* 279 F 417 (3d Cir. 1922) cert d 248 US 558, 39 S Ct 6, 63 L ed 420 (see, also, the opinion of the district court in this case, 274 F 467, 469, D. C. E. D. Pa. 1921); *Drascovich v. Equitable Trust Co. of New York,* 3 F2d 724 (9th Cir. 1925); *Potter-Matlock Trust Company v. Myers* (1950, Ky) 239 SW2d 949; *Mayer v. Chase National Bank of City of New York,* 233 F2d 468 (2d Cir. 1956); *Shaskan v. Briskman,* 278 App Div 761, 104 NYS2d 627. The

rationale of these adjudications is the same as that in the cases involving the rights of stockholders. See *State v. Fidelity Union Trust Co.*, supra. *Louisville & N. R. Co. v. Robin*, 135 F2d 704 (5th Cir. 1943) (one judge dissenting) is a decision to the contrary and *American Loan & Trust Co. v. Grand Rivers Co.*, 159 F 775 (C. C. W. D. Ky. 1908) contains a contrary dictum. This class of cases, however, is to be distinguished because, as Judge Medina said in *Mayer v. Chase National Bank of City of New York*, supra, "the question concerns the rights of creditors * * * of an express trust." There is, of course, no such trust in the case of the holders of the debentures. It is true that the assets of an insolvent corporation are frequently referred to as a trust fund for the benefit of creditors, *American Bank v. Port Orford Co.*, 140 Or 138, 142, 12 P2d 1014, and cases there cited; but this does not mean that any particular creditor has an equitable interest in the fund amounting to a lien. The trust fund doctrine was explained in the leading case of *Hollins v. Brierfield Coal & Iron Co.*, 150 US 371, 383, 14 S Ct 127, 37 L ed 1113, where the court, after reference to a prior decision, said:

"* * * All that it decides is, that when a court of equity does take into its possession the assets of an insolvent corporation, it will administer them on the theory that they in equity belong to the creditors and stockholders rather than to the corporation itself. In other words, and that is the idea which underlies all these expressions in reference to 'trust' in connection with the property of a corporation, the corporation is an entity, distinct from its stockholders as from its creditors. Solvent, it holds its property as any individual holds his, free from the touch of a creditor who has acquired no lien; free also from the touch of a stockholder who, though equitably interested in, has no

legal right to, the property. Becoming insolvent, the equitable interest of the stockholders in the property, together with their conditional liability to the creditors, places the property in a condition of trust, first, for the creditors, and then for the stockholders. Whatever of trust there is arises from the peculiar and diverse equitable rights of the stockholders as against the corporation in its property and their conditional liability to its creditors. It is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder."

It has been said that "upon the same principle that a court of equity administers a dead man's estate, it should administer the affairs of a corporation that has ceased its life work." 15A Fletcher on Corporations (perm ed) 940, § 7620; *Nunnally v. Strauss,* 94 Va 255, 260, 26 SE 580; *Finney v. Bennett,* 27 Gratt. (Va) 365, 370. In Oregon, as the result of statute, generally all claims against a decedent's estate which are not presented prior to the entry of final discharge of the personal representative are barred from payment out of the estate funds. ORS 116.505, 116.510; *First Nat. Bank v. Connolly,* 172 Or 434, 481, 138 P2d 613, 143 P2d 243; *Livesley et al v. Pioneer Trust Co. et al,* 170 Or 613, 643, 135 P2d 777.

Formerly, the national bankruptcy act provided that dividends remaining unclaimed should be distributed to creditors whose claims have been allowed, but in 1956 Congress amended § 66 a of the act and repealed § 66 b so as to provide that such surplus funds shall be paid by the trustee into the bankruptcy court to be deposited and withdrawn as provided in 28 USC (1958 ed) § 2042. 11 USC (1958 ed) § 106. At

all times the rightful owner may claim the amount due him. See 3 Collier, Bankruptcy (14th ed, 1960 cum supp) 2322-2323.

There is no statute applicable to the instant proceeding. The fund is being administered by the circuit court through its corporate trustee, which in effect is a receiver, in the exercise of the court's general equity jurisdiction. And it is held in numerous cases that without statute a court in such a proceeding is empowered to fix a reasonable time within which the claims of creditors must be filed or they will be barred, unless an adequate excuse is shown. *Chicago Joint Stock Land Bank v. Minnesota L & T Co.*, 57 F2d 70, 72 (8th Cir. 1932); *State v. Hartman*, 221 Mo App 215, 226, 300 SW 1054; *Backer v. A. B. & B. Realty Co.*, 107 NJ Eq 246, 152 A 241; *Independent V. & S. Co. v. Iowa Merc. Co.*, 189 Iowa 874, 876, 179 NW 157; see 2 Tardy's Smith on Receivers (2d ed) 1661, § 595; 3 Clark on Receivers (3d ed) 1143, § 652 (a); 19 CJS 1286, Corporations § 1540.

In this case the creditors have had approximately 14 years in which to file their claims and extraordinary efforts have been put forth by the trustee, acting under the direction of the court, to locate those who have not filed. These efforts have been unavailing and it is, of course, desirable that the proceeding be terminated as speedily as possible. The court has entered a valid order, the effect of which is to bar the general creditors who have not filed their claims, and there remains a portion of the original fund which the court took in charge to administer for the benefit of creditors. Creditors who have filed their claims have not been paid in full. In view of the court's power to bar non-appearing creditors, those who have filed

have become the only creditors of the corporation who are entitled to consideration.

> "* * * The equity court may, of course, administer the property within its control, without regard to creditors whose claims have not been proved and allowed by it." *Hatch v. Morosco Holding Co.*, 19 F2d 766, 769 (2d Cir. 1927), citing *Penn. Steel Co. v. N. Y. City Ry. Co.*, 229 F 120 (C C A 2).

We think that it is equitable and agreeable to the trust fund doctrine, properly understood, that these moneys be distributed among the creditors who have appeared, no creditor, however, to receive more than the amount of his claim.

We conclude that the circuit court was justified in the order appealed from so far as it affects the debenture holders who have not filed claims, but erred as to the holders of Series 1 bonds.

■■ It remains to determine whether the state is now entitled to recover the portion of the fund held in trust for the Series 1 bondholders who have not filed claims.

The attorney general contends that the fund has escheated to the state pursuant to the provisions of OCLA, § 77-262, as amended by Oregon Laws 1943, ch 92. It is objected that the instant proceeding is not one which comes within the terms of this section; but, this aside, since the section was repealed by Oregon Laws 1953, ch 549, § 136, its provisions cannot now be invoked unless it should be held that the fund escheated by operation of law during the time that that statute was in effect. We think that the statute cannot be constitutionally so construed.

The general escheat statute of this state, ORS 120.010, provides:

"Immediately upon the death of any person who dies intestate without heirs, leaving any real, personal or mixed property, interest or estate in this state, the same escheats to and vests in the state, * * *."

In *In re Ohlsen's Estate,* 158 Or 197, 75 P2d 6, we held that if an owner of land dies intestate without heirs the title vests immediately in the state by operation of law and no proceeding is necessary. A judicial proceeding or inquest of office, as the common law term has it, "is simply the means by which the State furnishes authentic record evidence of her title." *Sands v. Lynham,* 27 Gratt. (Va) 291, 21 Am Rep 348, quoted at 158 Or 204. Whether the same rule holds for personal property in the case of one dying intestate without heirs is a question not now before us. In *In re Melrose Ave.,* 234 NY 48, 136 NE 235, 23 ALR 1233, persuasive reasons are given by Mr. Justice Cardozo, as a member of the New York Court of Appeals, why personal property should not be treated differently. "What was once an incident of tenure" he wrote, "has become an incident of sovereignty. * * * With tenures abolished, succession is by like right, whether the subject of escheat is personal estate or real." 234 NY at 53.

But under modern statutes designed to bring within the control and possession of the state unclaimed moneys and other personal property of persons who cannot be found but may still be living, the right of the state is not based on succession. At common law only land was subject to escheat, *In re Melrose Ave.,* supra; 5 Thompson, Real Property § 2510 (1957 Replacement, p 386); and "abandoned personal property

was not the subject of escheat, but was subject only to the right of appropriation by the sovereign as *bona vacantia.*" *Anderson Nat. Bank v. Luckett,* 321 US 233, 240, 64 S Ct 599, 88 L ed 692, 151 ALR 824. As the court said in that case: "Like rights of appropriation, except so far as limited by state law and the Fourteenth Amendment, exist in the several states * * * ."

In many, if not all, the states statutes provide for the recovery by the state of the moneys in dormant bank accounts where the depositor cannot be found and the account has remained inactive for a certain number of years. Such statutes, when they provide for notice and an opportunity to be heard, do not violate due process. *Provident Savings Institution v. Malone,* 221 US 660 (1911), 31 S Ct 661, 55 L ed 899, 34 LRA NS 1129; *Security Sav. Bank v. California,* 263 US 282 (1923), 44 S Ct 108, 68 L ed 301, 31 ALR 391. In the former case it was pointed out that before the money in such an account could be turned over to the state official designated by the statute to receive it, a proceeding in court with proper notice to the bank and the depositor must be had. "Even then," the court said, "the property is not escheated, but deposited with the treasurer to hold as trustee for the owner or his legal representatives, to whom it is payable when they establish their right." 221 US at 665. In *Security Sav. Bank v. California,* supra, where a statute of this type was sustained, the court, speaking through Mr. Justice Brandeis, said:

"* * * But whether the proceeding should be described as being *in rem* or as being *quasi in rem* is not of legal significance in this connection. In either case the essentials of jurisdiction over the deposits are that there be seizure of the *res* at the commencement of the suit; and reasonable

notice and opportunity to be heard. (Citing authorities.) These requirements are satisfied by the procedure prescribed in the statutes of California. There is a seizure or its equivalent. And the published summons to the depositors named as parties defendant is supplemented by the notice directed to all claimants whomsoever. * * *" 263 US at 287.

The statute considered in the case of *Security Sav. Bank v. California* was construed by the Supreme Court of that state in *Mathews v. Savings Union B. & T. Co.*, 43 Cal App 45, 184 P 418. The court there rejected a contention that funds on deposit had escheated to the state by operation of law on the expiration of the time fixed in the statute and said that a construction of the act "by which title to money on deposit would pass to the state absolutely on the expiration of twenty years, without compensation to the owner and without notice and hearing before his property should be taken, would be intolerable." 43 Cal App at 52.

In accordance with the principles enunciated by the Supreme Court in the cases above cited, the court in *Marine Nat. Exchange Bank v. State*, 248 Wis 410, 22 NW2d 156, held unconstitutional a statute regarding dormant bank accounts because of the deficiency in the provision in the statute for notice and hearing.

In *Shannon, Auditor, v. Heringer*, 271 Ky 248, 111 SW2d 603, the court construed a statute which provided that any surplus remaining from the proceeds of the sale of goods to pay delinquent warehouse charges should be paid into the state treasury and held for a period of two years subject to the order of the owner. The state auditor contended that the statute meant that if the proceeds were not claimed by the owner by the end of two years they should

escheat. The court held that, since no judicial procedure was provided to accomplish such a purpose, the proposed construction could not be adopted without raising grave questions as to the constitutionality of the statute.

*Shackelford v. Pool,* 156 Okla 127, 9 P2d 756, is contra these decisions. We cannot reconcile the reasoning in this case, however, with fundamental principles of constitutional law.

 OCLA, § 77-262, as amended, is similar in its nature to the statutes relating to dormant bank accounts. It provides that in the winding up of the affairs of a corporation, the receiver or other liquidating agent must pay to the state land board liquidating dividends or other credits which have remained unclaimed for a period of six months after the final dividend shall have become payable; that at the time such payment is made the liquidating agent shall furnish the state land board and the corporation commissioner with a statement under oath containing the names and addresses of the persons entitled to the funds, or, if such are not known, a statement to that effect, together with a statement of the amount payable to each of such persons and that "[s]aid funds thereupon shall escheat to and become * * * a part of the irreducible common school fund of the state." The statute further provides that the owner or his heirs or personal representatives may reclaim any funds so deposited in the manner provided for estates which have escheated to the state. Recovery by the owner of escheated property is permitted within ten years after escheat under the terms of ORS 120.130.

The statute makes no provision for a judicial proceeding or notice or hearing of any kind. Were it to be enforced as written the persons entitled to the fund

in this case would have their property taken from them without notice or hearing in clear violation of the Fourteenth Amendment. Whether the constitutional objection could have been avoided by reading into the statute a legislative intent that a judicial proceeding should be employed in its enforcement need not now be determined. It is enough to say, that absent such a construction, the statute is unconstitutional and, in any case, the funds here in question have never escheated to the state.

Though the statute was repealed by Oregon Laws 1953, ch 549, § 136, its provisions were substantially reenacted by § 96 of that chapter. For the reasons heretofore given, the funds have not escheated under that section.

■ In 1957 the legislature enacted the Uniform Disposition of Unclaimed Property Act, Oregon Laws 1957, ch 670, now ORS 98.302, et seq. At the same session section 96 of the 1953 act, referred to above, was amended so as to make it applicable only to the involuntary dissolution of a corporation, Oregon Laws 1957, ch 670, § 29, now ORS 57.625. This section is not applicable to the instant case which is concerned with the voluntary dissolution of a corporation.

ORS 98.326 (a part of the Uniform Disposition of Unclaimed Property Act) reads:

"All intangible personal property distributable in the course of a voluntary dissolution of a business association, banking organization, or financial organization organized under the laws of or created in this state, that is unclaimed by the owner within two years after the date for final distribution, is presumed abandoned."

Briefly summarized, other provisions of the Uniform Act are as follows:

Every person holding funds presumed abandoned is required to file a report with the state land board concerning such funds before November 1 of each year as of June 30 next preceding. 98.352. The state land board is directed to publish in a newspaper a notice entitled "Notice of Names of Persons Appearing to Be Owners of Abandoned Property" and to mail notices to the persons having an address listed in the report. 98.356. The purpose of the publication and the mailed notices is to advise persons interested of their right to file a claim before the fund is turned over to the state land board. After a stated time the holder of the fund is required to turn it over to the state land board. 98.362.

"Upon the payment or delivery of abandoned property to the board, the state shall assume custody and shall be responsible for the safekeeping thereof. Any person who pays or delivers abandoned property to the board under this Act is relieved of all liability to the extent of the value of the property so paid or delivered for any claim which then exists or which thereafter may arise or be made in respect to the property." 98.366

ORS 98.392 permits any person claiming an interest in the fund to file a claim therefor. 98.396 provides for a hearing and determination of such claims by the state land board and 98.402 for an action in court by "[a]ny person aggrieved by a decision of the board * * *."

As the foregoing discloses, the Uniform Act is "custodial in nature,—that is to say, it does not result in the loss of the owner's property rights. The state takes custody and remains the custodian in perpetuity." 9A Uniform Laws Annotated 251. As stated by Mr. Chief Justice Stone in *Anderson Nat. Bank v.*

*Luckett,* supra, "the state takes into its protective custody" property presumed to have been abandoned: 321 US at 238.

The Uniform Act, in our opinion, applies to the Series 1 fund. The moneys in that fund are "presumed abandoned" under ORS 98.326. That section provides that all intangible personal property distributable in the course of a voluntary dissolution of a business association that is unclaimed by the owner within two years after the date for final distribution is presumed abandoned. What was "the date for final distribution" in this case? As above stated, the court on April 8, 1955, extended the life of the trust for a period of one year and provided that at the end of that time "if * * * any undisbursed funds shall remain in the hands of the trustee as to which it is unable to make proper disbursement, the same shall be disbursed by said trustee in such manner as may be provided for by further order of this Court on application by said trustee, * * *." Thereafter the trust was continued without any formal order of the court until the decree of April 12, 1960. In the meantime, some payments of liquidating dividends were made by the trustee, the last one to a Series 1 bondholder on November 4, 1956. Since then, so far as the record discloses, the trustee has been unable to make "proper disbursement" to anyone from the Series 1 fund save to the state land board. The provision in the decree of April 12, 1960, extending the time for filing claims by holders of obligations who had already received their pro rata share was, for the reasons above given, nugatory so far as it affected the Series 1 fund, and cannot, therefore, be regarded as fixing the time for final distribution of that fund. We think that the date of that event was no later than November 4,

1956, on which the payment above referred to was made.

In the decree of distribution appealed from, the court allowed an attorney's fee of $150, each, to the attorneys representing, respectively, the debenture holders and the Series 1 bondholders. The state challenges the allowance as erroneous. It is defended on the ground that the persons named as defendants were sued as representatives, respectively, of the whole class of debenture holders and the whole class of Series 1 bondholders. The defendants' brief says:

> "In a representative or class suit, attorney's fees are recoverable out of a fund by the representative of a class where the class represented is large in number and where the questions involved reasonably require litigation."

Without either approving or disapproving the foregoing proposition, we are of the opinion that in the peculiar circumstances of this case the allowance of attorneys' fees was erroneous. The services for which the fees were awarded consisted in the successful effort of the attorneys to induce the circuit court to hold that the undistributed funds should be divided among the claimants who had theretofore appeared and had been paid their pro rata shares. On this question the interests of persons within the classes were diverse. While it was to the interest of the so-called diligent creditors that the court should enter the order that it did, it was certainly not to the interest of the creditors who had not been found. As to them, the result of the attorneys' efforts was a deprivation of the right which the Uniform Disposition of Unclaimed Property Act gives them of reclaiming their property at any time without limitation. It is our view that if attorneys are to be compensated on

the theory that they are rendering legal services to a class of persons, it must appear, at least, that the services are in the interest of all those claimed to be represented and not opposed to the interest of some of them.

The order denying the state's petition for leave to intervene is reversed, and the decree of distribution modified, and the cause is remanded to the circuit court for the allowance of such petition and further proceedings in conformity with this opinion. No costs or disbursements will be allowed.

O'CONNELL, J., dissenting.

The parties and the trial court apparently proceeded on the assumption that the securities issued as Series I "Profit Sharing Bonds" were in fact bonds. We now treat these "bonds" as stock and apply a theory of distribution with respect to which the parties to this proceeding have not had an opportunity to present argument.

It should be noted that our holding in this case produces the unusual result of postponing bondholders (the debenture holders) to the stockholders (Series I "bondholders") of the corporation upon dissolution and liquidation. This result may perhaps be explained on the ground that the findings of fact recite that there was a separate fund solely for the benefit of the Series I bonds and that the fund was free and clear of the claims of any persons other than the holders of Series I bonds.

I have some doubt as to whether the findings in this case are conclusive on the question of whether the debenture holders are excluded from sharing in the assets set aside for the holders of the Series I bonds, but since the question was not argued I shall treat it as resolved in accordance with the findings.

My disagreement with the majority is on another point. The present case holds that the unclaimed interest of a bondholder is available for distribution to the other bondholders who have presented their claims, but that the unclaimed interest of a stockholder is not available to the diligent stockholders. Why should there be this difference in treatment of the two types of security holders? The majority opinion states that it is the "recognized rule" that an unclaimed share of a stockholder in a liquidation fund is not available to other stockholders. The support for this rule is very meager, there being three adjudicated cases applying it. *In re Hull Copper Co.,* 46 Ariz 270, 50 P2d 560, 101 ALR 664 (1935); *State v. Fidelity Union Trust Co.,* 25 NJ 387, 136 A2d 636 (1957); *In re Central N. J. Land Etc. Co.,* 113 NJ Eq 332, 166 A 705 (1933). See, Note, Disposition of Unclaimed Distributive Shares of a Dissolved Corporation, 45 Yale L J 720 (1936).

These cases are worthy of our notice only to the extent that they contain an acceptable rationale. The rationale is stated in the quotation from *Central N. J. Land Etc. Co.,* supra, which is set out in the majority opinion. In essence it is that upon dissolution the assets of a corporation become a "trust fund" and that "the title of the stockholder becomes an equitable right to a distributive share therein." That is simply the statement of a conclusion. The negative of that proposition is equally valid unless some reason can be advanced for depriving diligent stockholders of a right to the unclaimed part of the liquidation fund. I am concerned here only with the situation where the diligent stockholder has not been made whole by the initial distribution of the dissolved corporation assets. That is the situation in the case before us. It raises

this question: Upon the liquidation of a corporation should the state receive a part of the assets of the corporation when the diligent stockholders have not been fully paid? Or, put in another way: Why should the court permit the diligent bondholders to share in the unclaimed assets available to bondholders but deny to diligent stockholders the right to share in the assets available to shareholders?

We do not answer these questions by stating that the assets of the corporation are held in trust for the stockholders individually or that the stockholders have a pro rata proprietary interest in the assets of the corporation. The question in this case is: What is a fair and equitable method of disposing of the unclaimed liquidation fund? That question is not answered by interjecting the question-begging concept of a trust or by relying upon the conclusion of a few poorly reasoned cases.

The choice of rules is not clearly dictated by strong considerations of policy either way. Favoring the rule which gives the state custody of the fund is the consideration that the stockholders who fail to present their claims initially have a further opportunity to do so under statutes such as ours. But, these stockholders must be assumed to have received notice of the liquidation and it is not likely that they will later appear to make their claim against the state.

The real question is whether such contingent interests should prevail over the interests of diligent stockholders who have not been repaid in full for their investment. I believe that the latter interest should be preferred. The rule should be the same for both bondholders and stockholders. There is no reason for making a distinction between the two types of claimants. In each case the claimants who have failed to

present their claims in accordance with the procedure provided for in the decree should be barred.

This method of treating nondiligent claimants is not novel. It comports with the method of distribution provided for in various statutes under which the diligent creditors are entitled to share in the surplus resulting from the failure of other creditors to present their claims. 3 Bancroft's Probate Practice (2d ed 1950) §§ 829-832; see, e.g., Cal Prob Code § 707; Model Probate Code (1946) § 135 (a); ORS 116.505-116.510; Wash Rev Code § 11.40.010. At least one state has provided that dividends declared pursuant to an assignment for creditors will, if unclaimed for one year, be distributed among diligent creditors. N Y Debt & Cred Law § 198. Because the solution in such cases is provided by statute, the analogy is not perfect (see *Mayer v. Chase National Bank of City of New York*, 233 F2d 468, 470-471 (2nd Cir 1956)), but in my opinion the principle which prompted such legislation is sound and a court of equity has the power, without the aid of a statute, to apply it.[①]

The majority opinion, in dealing with the fund available to the debenture holders, adopts the principle of distribution which is applied in the administration of decedents estates. It is not explained why this same principle should not be applicable in distributing the fund available to the stockholders. Admittedly, in the usual case the interest of bondholders and stockholders differ with respect to their respective rights to the

---

[①] Louisville & N.R. Co. v. Robin, 135 F2d 704, 706 (5th Cir 1943). See, Note, The Lost Shareholder, 62 Harv L Rev 295, 300 (1948); Comment, Unclaimed Dividends and Shares of Stock, 46 Ill L Rev 82, 86 (1951); Note, Disposition of Unclaimed Distributive Shares of A Dissolved Corporation, 45 Yale L J 720, 721 (1936). See also the authority cited for this proposition in the majority opinion.

corporation assets upon dissolution. But, their bargain with the corporation establishing the priority of the bondholders over the stockholders upon liquidation has nothing to do with the rights of the stockholders inter se or the rights of the bondholders inter se with respect to the distribution of an unclaimed fund resulting from the failure of some members of these groups to present their claims. Unfortunately, there is no express agreement between the corporation and the purchasers of the securities, or between the latter inter se with respect to such an unclaimed fund. I would venture the speculation however that, if the stockholders in the present case had bargained on the matter amongst themselves, they would have preferred to have the surplus fund divided among the diligent and unsatisfied claimants up to the amount of their investment. Assuming reasonable notice and the expiration of a reasonable time for the presentation of claims, it seems fair to conclude that such a result would have been preferred over the alternative of giving the remainder of the fund to the state to be held for the nonappearing stockholders, few if any of whom are likely to be located.

I would affirm the decree of the lower court.

SLOAN, J., concurs in this dissent.